# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-12-00675-CV

Nagakrishna Reddy, M.D.; and New Braunfels Ob/Gyn, P.A., Appellants

v.

Haley Hebner and Darrin Charles Scott,
Individually and as Next Friends of R. M. S., a Minor, Appellees

FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
NO. C2012-0266A, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## DISSENTING OPINION

I respectfully dissent from the Court's judgment dismissing the Scotts' suit and remanding for an award of attorney's fees against them. My disagreement with the majority stems from a differing understanding of the Texas Supreme Court's recent jurisprudence guiding our construction of the Medical Liability Act's (MLA's) expert-report requirement.

## WHAT THIS CASE IS ABOUT

It is helpful to begin with a clear understanding of the events that frame the issues on appeal. Viewed through the prism of the governing standard of review,[1] they are:

---

[1] The district court's order denying Dr. Reddy's motion to dismiss is reviewed under an abuse-of-discretion standard, *see, e.g.*, *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002) (per curiam) (citing *American Transitional Care Ctrs. of Tex., Inc. v. Palacios*, 46 S.W.3d 873, 878-79 (Tex. 2001)), which inquires ultimately as to whether the trial court acted arbitrarily, unreasonably, or without reference to guiding rules or principles. *See id.* (citing *Downer v. Aquamarine Operators, Inc.*, 707 S.W.2d 238, 241-42 (Tex. 1985)). Within this overarching

- On February 12, 2010, R.M.S., the infant daughter of Darrin Scott and Haley Hebner (collectively, the Scotts), died following a medically problematic birth at New Braunfels's Christus Santa Rosa Hospital. Among the medical professionals allegedly involved with R.M.S.'s care was Dr. Nagakrishna Reddy, M.D., a board-certified OB-GYN.

- In August 2011—roughly one and one-half years after their child's death—the Scotts, through trial counsel,[2] gave the pre-suit written notice required by the MLA[3] to Dr. Reddy and Reddy's professional association (collectively, Reddy[4]). Additionally, to elaborate "regarding the details of Dr. Reddy's negligence," the notice referenced an attached expert report and curriculum vitae of Dr. Barry Schifrin, M.D., a physician board-certified in both OB-GYN and maternal-fetal medicine. I will explore the contents of this report in more detail shortly, but it is worth noting initially that the report is addressed to the Scotts' trial counsel and dated January 25, 2011; indicates at the outset that it is "Re: Hebner/Scott, Haley & [R.M.S.]"; purports to recount medical care provided by Reddy to Ms. Hebner and the child before, during, and after the child's birth; and states opinions as to Reddy's standard of care, various ways in which Reddy allegedly breached it, and how these breaches allegedly caused the child's death. For reasons that will soon become apparent, I will subsequently refer to this report as the "first" Schifrin report.

- On February 22, 2012, the Scotts, through their trial counsel, filed their suit against Reddy.[5] There is no dispute that the Scotts asserted a "health care liability claim" against Reddy and

---

inquiry, we review de novo any legal determinations by the district court (e.g., construction of the MLA), *see Stockton v. Offenbach*, 336 S.W.3d 610, 615 (Tex. 2011), but defer to any factual determinations to the extent they are supported by evidence. *See id.* In the absence of findings of fact and conclusions of law—and none were requested or made here—we imply all fact findings necessary to support the district court's order—which, again, denied Reddy's dismissal motion—on any theory of law supported by the record. *See Rosemond v. Al-Lahiq*, 331 S.W.3d 764, 767-68 (Tex. 2011) (per curiam).

[2] The Scotts are represented by different counsel on appeal.

[3] *See* Tex. Civ. Prac. & Rem. Code § 74.051.

[4] As the majority correctly observes, the Scotts assert only vicarious-liability theories against the association, so their compliance with the MLA's expert-report requirement as to the association hinges entirely upon their compliance as to Dr. Reddy. *See Gardner v. U.S. Imaging, Inc.*, 274 S.W.3d 669, 671-72 (Tex. 2008) (per curiam).

[5] The Scotts also sued the hospital, but that claim is not pertinent to this appeal.

were thus required to serve the expert report or reports required by the MLA not later than 120 days thereafter—June 21, 2012.[6]

•     The Scotts' trial counsel sought to comply with the expert-report requirement contemporaneously with serving the original petition, attaching to the petition a report from Dr. Schifrin.[7] However, *this* report from Dr. Schifrin was decidedly not the same one that had accompanied the August 2011 pre-suit notice letter to Reddy. While similar in nature, structure, and level of detail, and likewise addressed to the Scotts' trial counsel, it bore a different date (August 3, 2011), referenced a different case or client ("Re: Lannom v D'andra Bingham, M.D. et al"), and stated opinions regarding care allegedly provided by a different OB-GYN to a different mother and infant, with different alleged resulting harm (physical injuries rather than death), at a different Christus hospital, located in a different city (Texarkana), further noting that the child's care thereafter had even continued in a different state, at the Arkansas Children's Hospital.

•     Reddy did not assert objections to the Schifrin report that had been served with the Scotts' original petition (the "second" Schifrin report).[8] Instead, on June 29, 2012—about a week following the expiration of the 120-day expert-report deadline—Reddy filed a motion to dismiss predicated on the assertion that the Scotts had failed entirely to serve any expert report as to her.[9]

---

[6] As the majority observes, this is the deadline under the version of the MLA applicable to this appeal. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.01, sec. 74.351(a), 2003 Tex. Gen. Laws 847, 875 (amended 2005, 2013) (current version at Tex. Civ. Prac. & Rem. Code § 74.351(a)). For convenience, all subsequent citations to the MLA will refer to the applicable version of that statute.

The MLA allows for an extension of the 120-day deadline by agreement of the parties. *See* Tex. Civ. Prac. & Rem. Code § 74.351(a). This exception has no application here.

[7] I tend to agree with the majority that the second expert report the Scotts served with their original petition, the Murray report pertaining to nursing care, would not aid the Scotts with respect to Reddy. However, one would not need to reach that question under the foregoing analysis concerning the Schifrin reports.

[8] *See id.* ("Each defendant physician or health care provider whose conduct is implicated in a report must file and serve any objection to the sufficiency of the report not later than the 21st day after the date it was served, failing which all objections are waived.").

[9] *See id.* § 74.351(b) ("If, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall . . . enter an order that: (1) awards to the affected

3

- On July 23, 2012, the Scotts filed with the district court a copy of the first Schifrin report with curriculum vitae. Subsequently, on August 7, 2012, the Scotts filed and served a response with attached evidence that included the first Schifrin report, thereby serving that report on Reddy. The attached evidence also included proof that the first Schifrin report had additionally been served on Reddy via both certified mail and regular mail with the Scott's pre-suit notice letter back in August 2011. Reddy did not controvert this evidence. In their response, the Scotts urged that the district court deny Reddy's motion and, in the alternative, grant them a 30-day extension to cure any deficiencies.

- Following a hearing at which no additional evidence was presented, the district court denied Reddy's motion to dismiss without specifying the grounds on which it relied. No findings of fact and conclusions of law were requested or made. Reddy appealed the district court's order.[10]

In sum, this is a case about health-care-liability claimants who timely serve a defendant with an expert report that facially and quite obviously addresses a different case altogether. It is also a case where there is uncontroverted evidence that: (1) the claimants had obtained an expert report addressed to the incident case (the first Schifrin report) well in advance of the 120-day deadline (in fact, as much as a year or more before they filed suit); (2) even served that report on the defendant before filing suit; and (3) served that report on the defendant again after the 120-day deadline had run but before the district court ruled on the defendant's dismissal motion. Additionally, to the extent such facts would be necessary to support the district court's order,[11] the evidence in this case would support a reasonable inference that the claimants' service of only the inapplicable report during the 120-day period and not the applicable report was attributable to a

---

physician or health care provider reasonable attorney's fees and costs of court incurred by the physician or health care provider; and (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim.").

[10] *See id.* § 51.014(a)(9).

[11] *See Rosemond*, 331 S.W.3d at 767-68 (discussing implied fact findings).

misunderstanding by claimants' counsel throughout that period that she had actually served the applicable report instead.[12]

Another key variable framing the issues on appeal is the content of the applicable report itself. The Scotts argue, and I agree, that the first Schifrin report satisfies the MLA's requirements for the "expert report" with which they had to serve Reddy by the 120-day deadline. An "expert report" under the MLA must "represent an objective good faith effort to comply with the [Act's] definition of an expert report,"[13] which requires that, with respect to each of the elements of duty, breach, and causation, the expert supplies sufficient information to inform the defendant of specific conduct the expert has called into question and provides a basis for the court to conclude that the claimants' claims have merit.[14] The first Schifrin report satisfies this standard (or, alternatively, the district court would not have abused its discretion in concluding that it satisfies it), informing Reddy that Dr. Schifrin, a physician board-certified in both OB-GYN and maternal-fetal medicine, had concluded that Reddy had failed to meet the applicable standard

---

[12] In addition to the inferences that the district court could reasonably have drawn from the existence of the two Schifrin reports and the fact that the first Schifrin report had been served with the Scotts' pre-suit notice letter, Reddy presented evidence of a July 2, 2012 faxed letter from the Scotts' trial counsel in which counsel, responding to Reddy's dismissal motion, reminded Reddy's counsel that "Plaintiffs' expert reports" had been filed and served with their original petition. With this letter, counsel transmitted a copy of the Scotts' original petition with proof of service and the two expert reports that had accompanied the petition—which, again, included the second Schifrin report rather than the first. This correspondence would tend to confirm that the Scott's trial counsel had labored—and, as late as July 2, 2012, had continued to labor—under a misunderstanding as to which of the two Schifrin reports had accompanied the original petition served on Reddy.

[13] Tex. Civ. Prac. & Rem. Code § 74.351(*l*).

[14] *See, e.g., Scoresby v. Santillan*, 346 S.W.3d 546, 555-56 (Tex. 2011) (citing Tex. Civ. Prac. & Rem. Code § 74.351(*l*), (r)(5), (6); *Palacios*, 46 S.W.3d at 879) (summarizing the analysis); *Hebert v. Hopkins*, 395 S.W.3d 884, 889-91 (Tex. App.—Austin 2013, no pet.) (same).

of care by, inter alia, failing to monitor for and appropriately respond to signs of fetal distress and complications during labor—including deprivation of R.M.S.'s oxygen supply—causing the child severe neurological damage, organ damage, and death, and cited specific alleged acts and omissions by Reddy.

That the Scotts were able to obtain an "expert report" whose contents satisfy the statutory requirements, and were able to do so well in advance of the 120-day deadline, are of tremendous potential significance under the statutory scheme the Legislature created in the MLA. As with the MLA's statutory predecessor, the Medical Liability and Insurance Improvement Act (MLIIA), the Legislature's goal in the MLA was to make health care more available and affordable by reducing the cost of health-care-liability claims, and to that end it has imposed the expert-report requirements in an attempt to deter, identify, and eliminate frivolous lawsuits early in litigation.[15] In so doing, the Legislature has in essence determined that a claimant's inability to provide an MLA-compliant expert report to support its claim within the required time frame "'means that the claim is either frivolous, or at best has been brought prematurely.'"[16] But, as the Texas Supreme Court has emphasized in recent years, the converse is also true: if the claimant *can* provide an MLA-compliant expert report within the relevant time frame, it signals that the claim is "of potential merit," and the court has concluded that the Legislature intended to preserve those kind of claims for further

---

[15] *See, e.g.*, *Zanchi v. Lane*, 408 S.W.3d 373, 378-79 (Tex. 2013); *Scoresby*, 346 S.W.3d at 552.

[16] *Scoresby*, 346 S.W.3d at 554 (quoting *Palacios*, 46 S.W.3d at 878); *see also Zanchi*, 408 S.W.3d at 381, 383 (Hecht, J., concurring) ("In Section 74.351(a), the Legislature has in effect authorized a presumption that a claim lacks merit and should be dismissed if the claimant cannot provide a supporting expert report within 120 days after filing suit.").

adjudication[17] and not merely "to dispose of claims regardless of their merits."[18] And the Legislature

could not have done otherwise, the high court has added, because that would potentially imperil the

constitutionality of the expert-report requirement itself:

> It must be remembered that there are constitutional limitations upon the power of
> courts to dismiss an action without affording a party the opportunity for a hearing on
> the merits of his cause, and those limitations constrain the Legislature no less in
> requiring dismissal.[19]

Furthermore, as the Scotts point out, these considerations have, with seemingly

increasing frequency, informed the Texas Supreme Court's construction and application of the

MLA's expert-report requirements in recent years, including *Stockton*'s recognition that the court

"would, of course," construe the MLA expert-report requirements to incorporate a due-diligence

exception to the 120-day deadline if the requirement would otherwise create an unconstitutional

impossible condition;[20] to *Zanchi*'s holding that a defendant becomes a "party" whom the claimant

can serve with an expert report, so as to comply with the 120-day deadline, when the defendant

---

[17] *Zanchi*, 408 S.W.3d at 378-79 (quoting *Samlowski v. Wooten*, 332 S.W.3d 404, 410 (Tex. 2011) (plurality op.) (citing Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.11(b)(1), (3), 2003 Tex. Gen. Laws 847, 884)); *accord Leland v. Brandal*, 257 S.W.3d 204, 208 (Tex. 2008) ("In enacting section 74.351, the Legislature struck a careful balance between eradicating frivolous claims and preserving meritorious ones . . . .").

[18] *Scoresby*, 346 S.W.3d at 554.

[19] *Id*. (internal citations, quotations, and ellipses omitted); *see also Stockton*, 336 S.W.3d at 618 (observing that when construing the MLA, as with other statutes, "[w]e presume . . . the Legislature intends to comply with the state and federal constitutions" and that "'we are obligated to avoid constitutional problems if possible.'" (quoting *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 169 (Tex. 2004), and citing Tex. Gov't Code § 311.021(1))).

[20] *Stockton*, 336 S.W.3d at 618.

is named in the lawsuit and does not additionally require that the claimant also secure service of process or an appearance;[21] to the high court's holdings in *Scoresby* and *Samlowski* regarding the availability of extensions to cure "deficiencies" in reports.[22]   Although it is true that the supreme court (and, as far as anyone can tell, any lower courts) have not had occasion to apply the MLA's expert-report requirements to circumstances quite like those presented in this case (which I anticipate all concerned would prefer not to see repeated often), I would respectfully suggest that this lower appellate court ought nonetheless to take some hints from the direction of the high court's jurisprudence lately.

As a final observation regarding the record in this case, it is true, as the majority indicates, that the "four corners" of a challenged expert report remains a chief evidentiary focus in reviewing trial court decisions applying the MLA's expert-report requirements.[23]   However, in *Samlowski*, a majority of the Texas Supreme Court held that extrinsic evidence—including the existence of a report that cures defects in the challenged report—is also relevant to whether the trial court may or must grant a 30-day extension in lieu of finally dismissing the suit for failure

---

[21]   *Zanchi*, 408 S.W.3d at 378-79; *see also id.* at 381-83 (Hecht, J., concurring) (urging that MLA's use of "party" is ambiguous and that the above-mentioned legislative intent and constitutional considerations and not any "abstract" meaning of the term should be the primary guides in construing it).

[22]   *See Scoresby*, 346 S.W.3d at 554, 556-57; *Samlowski*, 332 S.W.3d at 410-11 (plurality op. of Medina, J., joined by Jefferson, C.J., and Hecht, J.); *id.* at 416 (Guzman,  J., joined by Lehrmann, J., concurring in the judgment); *see also Scoresby*, 346 S.W.3d at 549 & nn.7-8, 554 (recognizing this to be the majority holding of the *Samlowski* court and noting its underlying rationales).

[23]   *See Bowie Mem'l Hosp.*, 79 S.W.3d at 53; *see also Scoresby*, 346 S.W.3d at 554 (observing that MLA's extension mechanism "shift[ed] the focus from the claimant's conduct to the report's contents.").

to serve an MLA-compliant expert report, at least to the extent that this evidence is before the trial court by the time it rules on the motion to dismiss.[24] In this case, the existence and contents of the first Schifrin report were before the district court by the time it ruled on Reddy's dismissal motion. Accordingly, the existence and contents of that report are potentially relevant to our review of the court's order—and, I ultimately conclude, they are highly relevant under the Texas Supreme Court's recent jurisprudence construing the MLA's expert-report requirement.

So, to summarize the factual and procedural circumstances framing the issues on appeal, the key question boils down to whether the MLA left the district court discretion to do anything but immediately dismiss the Scotts' health-care-liability claim against Reddy despite uncontroverted evidence that they had successfully obtained an MLA-compliant expert report indicating the claim's potential merit well in advance of the 120-day deadline (indeed, well in advance of even filing suit) and had even served this report on Reddy before filing suit, yet through a misunderstanding of counsel had ended up serving Reddy only with a plainly inapplicable report from a different case during the 120-day period after they filed their original petition. In short, this case is about whether the MLA mandates immediate dismissal of a claim that the Act would deem potentially meritorious for the sole reason that, as the majority aptly puts it, the Scotts' counsel

---

[24] *See Samlowski*, 332 S.W.3d at 411 (plurality op. of Medina, J., joined by Jefferson, C.J., and Hecht, J.) (concluding that plaintiffs can (and must) "make a record" demonstrating that deficiencies in a challenged report "would have been cured" in order to preserve error from denial of thirty-day extension under section 74.351(c) and that claimant could do so through a post-judgment motion); *id*. at 422-23 (Johnson, J., joined by Green and Willett, JJ., dissenting to the judgment) (agreeing that such extrinsic evidence is relevant to the availability of an extension but insisting that such evidence must be presented to the trial court before it rules on motions to dismiss); *cf. id*. at 414-15 (Guzman, J., joined by Wainwright and Lehrmann, JJ., concurring in the judgment) (arguing that availability of extension should be determined from four corners of challenged report alone).

9

served "the wrong report."[25] I disagree with the majority that the MLA's expert-report requirement works this way, at least as the Texas Supreme Court has construed it lately.

## HOW THE MLA APPLIES TO THIS CASE

To conclude that the MLA compels immediate dismissal of the Scotts' health-care-liability claim against Reddy, the majority relies on three principal propositions. First, emphasizing *Zanchi*'s holding that a defendant becomes a "party" under the MLA when named in the claimant's suit, the majority reasons that because Reddy was not yet a "party" in this sense when the Scotts gave their pre-suit notice, service of the first Schifrin report with that notice did not suffice as service of the report on "that party or the party's attorney," as the MLA contemplates.[26] I will not quarrel with the proposition that pre-suit service of an expert report on a future defendant, *in itself*, would not discharge a claimant's obligation under the MLA to serve an expert report on "that party or the party's attorney," especially since this Court (with me writing) previously reached the same conclusion regarding service of an expert report before a defendant is made a "party," albeit while applying a notion of "party" eventually rejected in *Zanchi*.[27]

Accepting this proposition, the sole report the Scotts can be considered to have served on Reddy by the 120-day deadline would be the second Schifrin report. The second Schifrin report, unlike the first, unquestionably does not represent the required "good faith effort" to comply with

---

[25] *Reddy v. Hebner*, No. 03-12-00675-CV, slip op. at 12 (Tex. App.—Austin May 2, 2014, no pet. h.) (mem. op.), *available at* http://www.3rdcoa.courts.state.tx.us.

[26] Slip op. at 9-11; *see* Tex. Civ. Prac. & Rem. Code § 74.351(a).

[27] *See Carroll v. Humsi*, 342 S.W.3d 693, 698-700 (Tex. App.—Austin 2011, no pet.), *overruled in part by Zanchi*, 408 S.W.3d at 377-79.

10

the MLA's definition of "expert report," at least as to Reddy, because its subject matter, again, concerns an entirely different case and parties. Consequently, the MLA would, all other things being equal, indeed require dismissal of the Scotts' claim against Reddy on this basis.[28]

This brings us to the majority's second chief point of emphasis: The MLA, unlike the predecessor MLIIA, does not provide an extension or cure mechanism tied to "accident or mistake," per se, a theory or ground that would have had obvious relevance here.[29] Again, no dispute with that proposition from me. In the MLA, the Legislature replaced the MLIIA's mandatory 30-day "grace period" to cure noncompliance found attributable to "accident or mistake," which was available even when a claimant missed the expert-report deadline altogether, with an extension mechanism that differs in two key ways.[30] First, the MLA "distinguishes between missing a deadline altogether and serving an inadequate report" (i.e., a report that is timely served but does not represent an objective good faith effort to comply with the Act's requirements) and mandates immediate dismissal for the former.[31] Second, as to timely served but "inadequate" reports, the MLA, as previously alluded, authorizes trial courts to grant a single 30-day extension in the following circumstances:

---

[28] *See Scoresby*, 346 S.W.3d at 554 (observing that under MLA, "the same consequences attend serving an inadequate report that 'does not represent an objective good faith effort' to comply with the Act's requirements" as do failure to serve a report at all—dismissal).

[29] Slip op. at 13.

[30] *Cf.* Tex. Civ. Prac. & Rem. Code § 74.351, *with* Act of May 1, 1995, 74th Leg., R.S., ch. 140, § 1, sec. 13.01(g), 1995 Tex. Gen. Laws 985, 986, *repealed by* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 10.09, 2003 Tex. Gen. Laws 847, 884.

[31] *Scoresby*, 346 S.W.3d at 553-54.

> If an expert report has not been served [by the 120-day deadline] because elements of the report are found deficient, the court may grant one 30-day extension to the claimant in order to cure the deficiency.[32]

But while the MLA "shift[s] the focus from the claimant's conduct to the report's contents" as the basis for an extension, legislative intent to preserve some sort of "appropriate delay in finally dismissing a claim for want of an adequate report," as the Texas Supreme emphasized in *Scoresby*, "is undiminished."[33] And the MLA's specific extension mechanism, the *Scoresby* court further observed, reflects the Legislature's recognition "that when an expert report can be cured in thirty days, the claim is not frivolous" and should not (and cannot, in light of constitutional limitations) be dismissed as such.[34] As the supreme court summed it up, "An inadequate expert report does not indicate a frivolous claim if the report's deficiencies are readily curable."[35] And, applying similar reasoning, a majority of the Texas Supreme Court in *Samlowski* held that trial courts *must* grant a thirty-day extension where claimants can show that deficiencies in expert reports are curable within that time and "err on the side of granting the claimants' extensions to show the merits of their claims."[36]

---

[32] Tex. Civ. Prac. & Rem. Code § 74.351(c).

[33] *Scoresby*, 346 S.W.3d at 554.

[34] *Id*.

[35] *Id*. at 556.

[36] *Samlowski*, 332 S.W.3d at 410-11 (plurality op. of Medina, J., joined by Jefferson, C.J., and Hecht, J.); *id*. at 416 (Guzman, J., joined by Lehrmann, J., concurring in the judgment); *see also Scoresby*, 346 S.W.3d at 549 & nn.7-8, 554 (recognizing this to be the majority holding of the *Samlowski* court).

If curability is thus the key for obtaining a 30-day extension under the MLA, the evidence before the district court when it ruled demonstrated that the Scotts were entitled to one as a matter of law. That is, the evidence demonstrated conclusively that the Scotts could, within a 30-day extension period, cure their initial failure to serve Reddy with an expert report representing the required "good faith effort" to comply with the MLA's definition of "expert report" by the 120-day deadline—they needed only serve Reddy (again) with the first Schifrin report. In fact, the evidence before the district court demonstrates conclusively that the Scotts already *had* cured that failure by the time that court ruled. Assuming that the district court could credit the Scotts with this cure, it would not have abused its discretion in overruling Reddy's dismissal motion, as the ruling would be supported by a theory that the Scotts were entitled to a 30-day extension to cure their failure to serve an MLA-compliant expert report within the 120-day period and had already cured it before the court ruled, obviating the need for the court to order any additional time for cure.

But these observations bring us to the third proposition on which the majority principally relies, which is ultimately the core of its analysis—echoing Reddy's chief argument, the majority reasons that the Scotts were not entitled to any such opportunity for cure, nor can they have their cure credited, because the second Schifrin report, while served within the 120-day period, was the legal equivalent of the Scotts having missed the 120-day deadline altogether as to Reddy, leaving the district court no discretion but to dismiss the Scotts' suit immediately and award Reddy her attorney's fees.[37] The essence of the majority's analysis is that this case falls under the line of precedents recognizing a third category of noncompliance with the MLA's expert-report requirement

---

[37] *See* Tex. Civ. Prac. & Rem. Code § 74.351(b); *Ogletree v. Matthews*, 262 S.W.3d 316, 319-20 (Tex. 2007).

lying somewhere between the late-or-entirely-absent expert report scenario and the "deficient"-but-curable report scenario, but having the same consequences of immediate dismissal as the former category—an instrument timely served in purported compliance with the MLA's expert-report requirement is so inadequate substantively that it is deemed "no report" as to a defendant at all, even a "deficient" one. The precise distinction between a "no report" report and a merely "deficient" report has vexed Texas courts for years, but the Texas Supreme Court in *Scoresby* formulated the following test to guide that inquiry:

> [A] thirty-day extension to cure deficiencies in an expert report may be granted if [1] the report is served by the statutory deadline, [2] if it contains the opinion of an individual with expertise that the claim has merit, and [3] if the defendant's conduct is implicated.[38]

Applying this standard, the majority acknowledges that the second Schifrin report was timely served and "contain[s] opinions by [a] seemingly expert individual[] asserting that certain claims have merit," but deems it singularly fatal that the report does not "implicate" Reddy's conduct in the sense of complaining explicitly about her or the medical care she provided the Scotts. I cannot quarrel with the obvious—the second Schifrin report does not discuss Reddy or the medical care she provided the Scotts because, again, it pertains to entirely different parties in an entirely different case. However, for at least two related reasons, I disagree that this fact could be dispositive or otherwise alter the conclusion that the district court did not abuse its discretion in overruling Reddy's dismissal motion.

---

[38] *See Scoresby*, 346 S.W.3d at 557; *see also Ogletree*, 262 S.W.3d at 320-21 (rejecting argument that merely deficient report was "no report," such that trial court lacked any jurisdiction to grant a thirty-day extension).

First, as previously suggested, this case is profoundly different factually and procedurally from *Scoresby* and progeny like our recent *Fung* decision—indeed, this case appears to be without precedent in the annals of cases applying the MLA's expert-report requirement to date. The test articulated in *Scoresby* and applied in cases like *Fung* contemplates two basic factual scenarios: (1) as suggested in *Scoresby* itself, a claimant serves a document "utterly devoid of substantive content,"[39] such as "a sheet of paper with the two words, 'expert report,' written on it" or the thank-you-letter for a patient referral at issue in *Lewis v. Funderburk*;[40] or (2) a purported expert report, even while perhaps adequate as to one or more other defendants in a case, fails to accuse the particular defendant seeking dismissal of doing anything wrong, as occurred in *Fung*[41] and as the *Scoresby* court presumably contemplated in requiring that the challenged report "implicate" the defendant's conduct.[42] The common feature of both scenarios is that a "cure" of this sort of expert-report noncompliance would be tantamount to the creation of an "entirely new report[] based on changed facts" after the 120-day deadline had already expired,[43] contrary to the Legislature's judgment that a claimant's inability to procure any expert report as to a defendant

---

[39] *Scoresby*, 346 S.W.3d at 549.

[40] *Id*. at 556 (citing *Lewis v. Funderburk*, 191 S.W.3d 756, 762-63 (Tex. App.—Waco 2006) (Gray, C.J., dissenting), *rev'd*, 253 S.W.3d 204 (Tex. 2008)).

[41] *See Fung v. Fischer*, 365 S.W.3d 507, 534-37 (Tex. App.—Austin 2012, no pet.), *overruled on other grounds*, *Certified EMS, Inc. v. Potts*, 392 S.W.3d 625 (Tex. 2013).

[42] *See Scoresby*, 346 S.W.3d at 557.

[43] *Fung*, 365 S.W.3d at 536.

by that deadline signals a frivolous or premature claim that should be dismissed immediately.[44] But that is not the situation here. Here, by contrast, the Scotts successfully obtained an MLA-compliant expert report addressing Reddy's conduct well in advance of the 120-day deadline and somehow ended up timely serving a report from an altogether different case—the "wrong case"—instead. In short, this case represents a fourth and heretofore unprecedented category of MLA expert-report noncompliance that the standard articulated in *Scoresby* and applied in *Fung* does not squarely address.

The second reason I conclude that the absence of an explicit reference to Reddy in the second Schifrin report could not be dispositive, and perhaps the more important one, is the Texas Supreme Court's reasoning underlying the *Scoresby* test. As the supreme court explains there, the *Scoresby* test is not intended to be a restrictive "weed-out" mechanism, let alone one directed to circumstances like those here, but is to be a "minimal standard" embodying an expansive view of the range of "deficient" reports for which an opportunity for cure is potentially available.[45] This "minimum standard" is warranted, the court reasoned, by two legislative purposes underlying the MLA. The first is the goal of reducing the expense of health care liability claims, which, the court observed, is thwarted when the same suit can give rise to successive appeals contesting both the trial court's discretion to grant a thirty-day extension (i.e., fights over whether a report is merely "deficient" and potentially curable or so bad that it is "no report" and incurable) and the trial court's

---

[44] *See, e.g.*, *Apodaca v. Russo*, 228 S.W.3d 252, 257-58 (Tex. App.—Austin 2007, no pet.); *see Scoresby*, 346 S.W.3d at 554 (quoting *Palacios*, 46 S.W.3d at 878); *see also Zanchi*, 408 S.W.3d at 381, 383 (Hecht, J., concurring).

[45] *See Scoresby*, 346 S.W.3d at 557.

16

ultimate order on a motion to dismiss.[46] By defining the "deficient" report category broadly, in

other words, the court sought to correspondingly reduce the volume of cases in which defendants

can colorably contend that a report is "no report" and effectively appeal 30-day extensions on

that basis. The second legislative policy underlying the *Scoresby* test is the one we have already

emphasized—to preserve potentially meritorious claims for further adjudication, and not merely

"dispose of claims regardless of their merits,"[47] and to that end make extensions available when a

deficiency can be cured in thirty days because "[a]n inadequate expert report does not indicate a

frivolous claim if the report's deficiencies are readily curable."[48] And it was for these same reasons,

the *Scoresby* court added, that it had held in *Samlowski* that trial courts *must* grant a thirty-day

extension where claimants can show that deficiencies in expert reports are curable within that time

and "'err on the side of granting the claimants' extensions to show the merits of their claims.'"[49]

These considerations lead me to conclude that the second Schifrin report must be

classified as a report whose "elements . . . are found deficient" deemed potentially curable under the

MLA[50] (and that already has been cured, as previously indicated), as opposed to being the legal

equivalent of "no report," as the majority concludes. With respect to the *Scoresby* test's specific

requirement that "the defendant's conduct [be] implicated" in the report, I would hold that this

---

[46] *See id.* at 556-57.

[47] *Id.* at 554.

[48] *Id.* at 554, 556.

[49] *Id.* at 549 n.7 (quoting *Samlowski*, 322 S.W.3d at 411 (plurality op. of Medina, J., joined by Jefferson, C.J., and Hecht, J.) (quoting *id.* at 416 (Guzman, J., joined by Lehrmann, J., concurring in the judgment))), 554.

[50] *See* Tex. Civ. Prac. & Rem. Code § 74.351(c).

17

requirement is inapposite under the circumstances presented here and because blindly applying it to these circumstances unmoors the test from the underlying legislative policies and constitutional considerations it was intended to effectuate. Dismissal of the Scotts' claim against Reddy under the circumstances they have established here represents a dismissal not because the claim is frivolous—to the contrary, the Scotts procured an expert report in advance of the 120-day deadline that would demonstrate the potential merit of their claim in the eyes of the MLA—but solely because their attorney served the "wrong" report during the 120-day period and not the right one. While this result may encourage full employment of conscientious legal assistants and staff to aid and watch over busy attorneys (as if the Bar needs to be further reminded of their importance), it is inconsistent with the legislative purposes and constitutional justification for the MLA's expert-report requirement as the Texas Supreme Court has explained them recently.

This construction of the MLA admittedly creates some potential tension between subsection (c) of section 74.351, the provision authorizing 30-day extensions where "elements of the report are found deficient,"[51] and the objection provision within subsection (a), which requires "[e]ach defendant physician or health care provider whose conduct is implicated in a report" to file and serve "any objection to the sufficiency of the report" within 21 days or waive the objection.[52] We have previously suggested that the deficient-but-potentially-curable reports under subsection (c) correspond to the reports to which "sufficiency" objections must be raised under subsection (a),[53]

---

[51] *See id.*

[52] *See id.* § 74.351(a).

[53] *See, e.g.*, *Fung*, 365 S.W.3d at 516.

18

and the *Scoresby* court presumably was drawing the same connection in generally requiring that "the defendant's conduct [be] implicated" in order for the report to fall under subsection (c).[54] Such potential tension between subsections (a) and (c) is easily resolved in either of two ways. First, for the same reasons I would conclude that the "implication" component of the *Scoresby* test is inapposite in this case, I would conclude that the present circumstances represent a unique instance in which an expert report that does not "implicate" a defendant, in the sense of explicitly referring to the defendant or discussing his or her conduct, is nonetheless considered to be a "deficient" report potentially susceptible to being cured. Assuming this, the defendant's deadline for objecting would run from the date the claimant served the defendant the correct report discussing the defendant's conduct, similar to *Zanchi*'s reasoning regarding expert reports served while a defendant is a "party" (i.e., named in a lawsuit) but has not yet been served with process.[55] Alternatively, I would conclude that under the circumstances here, whether the second Schifrin report "implicates" Reddy's conduct for purposes of subsection (a) and the *Scoresby* test must take account of how Reddy and counsel would have reasonably perceived that report after having previously been served with the first Schifrin report with the Scotts' pre-suit notice—as a quite obvious attempt to serve the same report again that somehow went awry. Again, that is not to say that service of the first Schifrin report with the pre-suit notice *in itself* satisfied the MLA's expert-report requirements, but that fact would nonetheless seem relevant to whether Reddy should be deemed to have notice of a report "implicating" his conduct and to which he should object. Under either view, Reddy would have

---

[54] *See Scoresby*, 346 S.W.3d at 557.

[55] *See Zanchi*, 408 S.W.3d at 379-80.

19

waived her objections to the sufficiency of the first Schifrin report, and those objections, as previously explained, would have been without merit in any event.

## CONCLUSION

The majority "recognize[s] the harshness of the result in this case," but is steadfast in deferring to what it perceives to be the Legislature's policy judgments reflected in the MLA's expert-report requirement.[56]  I respect and share that deference to the Legislature's policymaking prerogative.  However, informed by the Texas Supreme Court's recent guidance in construing and applying the MLA's expert-report requirement, I disagree that the Legislature intended or could intend for a claim like the Scotts', under circumstances like they have established here, to be deemed frivolous and dismissed without opportunity for cure or further adjudication.  I would instead affirm the district court's order.

_____

Bob Pemberton, Justice

Before Justices Puryear, Pemberton, and Rose

Filed:   May 2, 2014

---

[56]  Slip op. at 13.

20