# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00744-CV

### In re Deutsche Bank Securities Inc.

### ORIGINAL PROCEEDING FROM TRAVIS COUNTY

## M E M O R A N D U M   O P I N I O N

Deutsche Bank Securities Inc. ("Deutsche") has filed a writ of mandamus related to a lawsuit filed by the Texas County District Retirement System (the "System") in which the System alleged that various financial institutions made misrepresentations regarding the underwriting of residential-mortgage-backed securities that the System subsequently purchased. *See* Tex. Gov't Code § 22.221 (empowering appellate courts to issue writs of mandamus). After the System filed its suit, Deutsche filed a special appearance arguing that the System "failed to plead any jurisdictional facts sufficient to confer" personal jurisdiction over Deutsche because the requirements for specific and general jurisdiction were not met.

When challenging Deutsche's special appearance, the System alleged that "[t]here is a factual dispute as to whether Deutsche . . . is subject to general and specific jurisdiction in Texas." Further, the System argued that it "has served jurisdictional discovery on Deutsche" and that it should be allowed the opportunity "to obtain or compel" the jurisdictional discovery before the district court rules on Deutsche's special appearance. *See* Tex. R. Civ. P. 120a(3) (authorizing trial court to order continuance of special appearance to allow for jurisdictional discovery). In addition,

the System served a request for disclosure regarding, among other topics, Deutsche's efforts to market the type of securities at issue.

In response to the requests for disclosure, Deutsche asked the district court to issue a protective order based on the jurisdictional arguments that it made previously. *See id.* R. 192.6 (authorizing "person from whom discovery is sought" to request "an order protecting that person from the discovery sought"). After Deutsche filed its request for a protective order, the System filed a competing motion to compel Deutsche to respond to its previous discovery requests. In particular, the System alleged that it "served jurisdictional-discovery requests on Deutsche" seeking "evidence of Deutsche['s] conduct indicating its intent and purpose to serve the Texas market and its presence in Texas versus its presence in other states, both inquiries that are relevant to [the System]'s ability to establish personal jurisdiction over Deutsche Bank." Further, the System explained that "it does not have facts essential to justify its opposition to Deutsche['s] special appearance because those facts are in the unique control or possession of Deutsche" and argued that the district court "should compel Deutsche . . . to produce documents responsive to [the System]'s jurisdictional discovery requests so" the district court could properly resolve Deutsche's special appearance.

After the district court finished considering the parties' arguments, the court issued its order granting the System's motion to compel and denying Deutsche's request for a protective

order.[1]  Accordingly, the district court's order obligated Deutsche to provide responses to the following discovery requests:

1.  All Marketing Materials directed to [the System] concerning the [mortgage-backed securities].

2.  All documents or communications directed to or received from [the System] concerning the [securities].

3.  All Marketing Materials or Offering Documents directed to any person or entity that then resided or was domiciled in Texas concerning the [securities].

4.  All documents or communications directed to or received from any person or entity that then resided or was domiciled in Texas regarding the [securities].

5.  All documents and communications regarding any Marketing Materials or Offering Documents that [Deutsche] directed to any person or entity that then resided or was domiciled in Texas.

. . .

9.  All documents evidencing travel by any Deutsche Bank officer, employee, contractor, or agent to Texas in relation to the structuring, marketing, or sale of the [securities].

10.  All documents evidencing the opening of offices in Texas to structure, market, or sell residential-mortgage backed securities.

11.  All documents evidencing any work or services performed by any Deutsche Bank officer, employee, contractor, or agent within the state of Texas that relates in any manner to the [securities].

---

[1] In its order, the district court partially granted Deutsche's request for a protective order. Specifically, the district court ruled that the System's requests for disclosure were limited to the securities' "secondary market and [Deutsche]'s activities in Texas or directed at Texas" and disallowed eight requests for disclosure "because they [did] not seek discovery limited to the jurisdictional facts material to this case." *See* Tex. R. Civ. P. 192.6(b)(2) (allowing trial court to issue order that limits extent or subject matter of discovery).  The propriety of that ruling is not at issue in this proceeding.

. . .

13.  All documents concerning or related to the marketing of the [securities] to Pension Funds in Texas.

14.  All documents concerning or related to purchases of the [securities] by any person or entity in Texas.

15.  All documents concerning or related to [Deutsche's] efforts to create a Secondary Market for the [securities].

16.  All documents evidencing any work performed by any Deutsche Bank officer, employee, contractor, or agent in Texas in relation to creating a Secondary Market for the [securities].

17.  All documents evidencing any work performed by any Deutsche Bank officer, employee, contractor, or agent in Texas in relation to serving as a broker dealer on any transaction in the Secondary Market for the [securities].

18.  Documents sufficient to identify the number of Deutsche Bank officers and employees in, and the amounts of revenue derived from, each state of the United States of America.

. . .

21.  All documents evidencing travel to or from Texas by any Deutsche Bank officer, employee, contractor, or agent in connection with any work or meetings that related in any manner to the [securities].

22.  All documents evidencing any work or meetings by any Deutsche Bank officer, employee, contractor, or agent within the state of Texas that related in any manner to the [securities].

23.  All documents evidencing any phone calls, meetings, or communications with any third party mutual funds, investment analysts, portfolio managers, or other investment professionals related in any manner to the [securities] who then resided or was domiciled in the state of Texas.

24.  All documents evidencing any phone calls, meetings, or communications with any third party who then resided or was domiciled in the state of Texas, including but not limited to any servicer of the [securities], related in any manner to the [securities].

25. All documents evidencing Deutsche Bank's "distribution of the Offered [securities] . . . in negotiated transactions or otherwise" (as that phrase is used in the Prospectus Supplement dated May 19, 2006 for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-0A1) to any person or entity that then resided or was domiciled in Texas.

26. All documents evidencing any meetings, discussions, correspondence, or phone calls with anyone who was present in the state of Texas as part of Deutsche Bank's "distribution of the Offered [securities] . . . in negotiated transactions or otherwise" (as that phrase is used in the Prospectus Supplement dated May 19, 2006 for Deutsche Alt-A Securities Mortgage Loan Trust, Series 2006-0A1).

27. All documents and communications directed to or received from any Texas governmental entity or regulator, including but not limited to the Texas State Securities Board, that relate in any manner to the [securities].

Subsequently, Deutsche filed this petition for writ of mandamus challenging the district court's decision to grant the System's motion to compel and to deny Deutsche's motion for a protective order.

We will conditionally grant the writ of mandamus.

## GOVERNING FRAMEWORK AND MANDAMUS REQUIREMENTS

The System sought jurisdictional discovery under rule 120a of the Rules of Civil Procedure. *See* Tex. R. Civ. P. 120a. Among other things, that rule governs discovery issues related to special appearances, *id.* R. 120a(3); *see Parex Res., Inc. v. ERG Res., LLC*, 427 S.W.3d 407, 433 (Tex. App.—Houston [14th Dist.] 2014, pet. filed), and establishes the process that a party must comply with "to postpone disposition of the special appearance in order to conduct additional discovery," *Parex*, 427 S.W.3d at 433. In particular, the rule provides as follows:

Should it appear from the affidavits of a party opposing the [special appearance] motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may order a continuance to permit affidavits to be obtained

5

> or depositions to be taken or discovery to be had or may make such other order as
> is just.

Tex. R. Civ. P. 120a(3). Appellate courts review a trial court's ruling under rule 120a for an abuse of discretion. *Parex*, 427 S.W.3d at 433.

To obtain mandamus relief, Deutsche must show that the district court clearly abused its discretion when it denied the request for a protective order and granted the motion to compel, and Deutsche must show that it lacked an adequate remedy by appeal. *See In re Southwestern Bell Tel. Co., L.P.*, 226 S.W.3d 400, 403 (Tex. 2007) (citing *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004)). A "trial court abuses its discretion if it acts without reference to any guiding rules or principles or acts in an arbitrary or unreasonable manner." *Reddy v. Hebner*, 435 S.W.3d 323, 326 (Tex. App.—Austin 2014, pet. granted). "On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the relator establishes that the trial court could have reached but one decision, and not the decision it made." *In re Eurecat US, Inc.*, 425 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). However, mandamus "review of legal issues is not deferential," and a "trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts of the case." *Id.* "A trial court has no discretion in determining what the law is or applying the law to the facts." *Icon Benefit Adm'rs II, L.P. v. Mullin*, 405 S.W.3d 257, 263 (Tex. App.—Dallas 2013, orig. proceeding [mand. denied]).

## DISCUSSION

**No Adequate Appellate Remedy**

In its petition, Deutsche argues that mandamus is appropriate in this case because it has no adequate appellate remedy. As set out above, this mandamus concerns the propriety of the district court's order requiring Deutsche to submit to jurisdictional discovery requests. In challenging the order, Deutsche contends that discovery in this case was not authorized under the Rules of Civil Procedure because it has established that the district court did not have personal jurisdiction over Deutsche and because the System made no allegations regarding personal jurisdiction that the requested discovery would pertain to. Accordingly, Deutsche urges that if it is improperly obligated to respond to the discovery requests, that error cannot be undone on appeal because its due-process rights would already have been compromised and because it will already have had to go through the process and the expense of preparing and then disclosing the requested information.

"Mandamus review of significant rulings in exceptional cases" allows "the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments" and to "spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *In re Prudential*, 148 S.W.3d at 136. In deciding whether there is an adequate appellate remedy, courts consider "whether mandamus will preserve important substantive and procedural rights from impairment or loss." *In re Eurecat*, 425 S.W.3d at 582. "[M]andamus is the proper remedy" for "[a] discovery order that compels production beyond the rules of procedure." *In re National Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding); *see In re American Optical Corp.*, 988 S.W.2d 711, 713 (Tex.

7

1998) (orig. proceeding) (stating that "[a]n order compelling discovery that is well outside the proper bounds is reviewable by mandamus"); *see also In re Stern*, 321 S.W.3d 828, 837 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding) (explaining that appeal is inadequate when discovery order imposes burden that is disproportionate to benefit received by requesting party). Moreover, allowing "discovery of a potential claim against a defendant over which the court would not have personal jurisdiction denies him the protection Texas procedure would otherwise afford." *In re Doe*, 444 S.W.3d 603, 608 (Tex. 2014); *see Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014) (explaining that due-process constraints on states' "adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs"); *J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2785 (2011) (plurality op.) (explaining that "[d]ue process protects the defendant's right not to be coerced except by lawful judicial power" and that judicial power is not lawful unless defendant avails itself of privilege of conducting activities in forum state). Accordingly, if "the traditional elements of personal jurisdiction are totally absent," mandamus review is appropriate because the harm to the defendant is irreparable and because an ordinary appeal is not an adequate remedy. *Schroeder v. Valdez*, 941 S.W.2d 312, 314 (Tex. App.—Corpus Christi 1997, orig. proceeding).

For these reasons, we conclude that Deutsche does not have an adequate appellate remedy with which to challenge the requested discovery that it alleges exceeds the permissible scope of discovery.

**Abuse of Discretion**

In its petition, Deutsche contends that the district court abused its discretion by denying its request for a protective order and by granting the System's motion to compel because the System has failed to make allegations justifying jurisdictional discovery and because the requirements for personal jurisdiction cannot be met. "Texas courts may exercise personal jurisdiction over a nonresident if '(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due-process guarantees.'" *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 149 (Tex. 2013) (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007)); *see also Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 337 (Tex. 2009) (explaining that broad language of Texas long-arm statute reaches as far as federal constitutional requirements allow and, therefore, analyzing only whether acts were sufficient under due-process requirements). The plaintiff has "the burden of pleading allegations sufficient to confer jurisdiction," and if that burden is met, "the burden shifts to the defendant to negate all potential bases for personal jurisdiction the plaintiff pled." *OAO Gazprom*, 414 S.W.3d at 149.

When presenting its claims, Deutsche notes that there are two types of personal jurisdiction: general and specific. *See Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (discussing two types). Further, Deutsche argues that it is not subject to general jurisdiction in Texas as recently clarified by the Supreme Court. *See id.* at 760-62 (describing circumstances in which foreign corporation is subject to general jurisdiction). Next, Deutsche contends that the district court abused its discretion by allowing the System "to pursue discovery concerning whether [Deutsche]

9

is subject to specific jurisdiction" because the System did not prove or allege in its petition any facts demonstrating that exercising specific jurisdiction over Deutsche satisfies the governing due-process requirements.

*General Jurisdiction*

General jurisdiction arises for foreign corporate defendants when their corporate activities in a state are so substantial that they would justify a suit against the defendant based on claims that are distinct from those activities. *Id.* at 754; *see also id.* at 758 n.11 (explaining that "general jurisdiction requires affiliations" that are so systematic and continuous that foreign corporation could be considered at home in forum state); *Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 134 (2d Cir. 2014) (explaining that general jurisdiction permits court to hear all claims against entity). Recently, the Supreme Court pointed out that over the years, the concept of general jurisdiction "has come to occupy a less dominant place" in personal-jurisdiction jurisprudence. *See Daimler*, 134 S. Ct. at 755, 758. When clarifying this diminished role, the Court stated that there are "only a limited set of affiliations with a forum" that will render a defendant subject "to all-purpose jurisdiction there." *Id.* at 760. Specifically for corporate defendants, the Court stated that "the place of incorporation and principal place of business" are the prime locations for general jurisdiction. *Id.* "Those affiliations have the virtue of being unique—that is, each ordinarily indicates only one place—as well as easily ascertainable." *Id.* When describing these locations, the Court explicitly rejected as "unacceptably grasping" the suggestion that corporations should be subject to general jurisdiction in any and every state in which it engaged in a systematic, continuous, and substantial course of business. *Id.* at 761; *see also id.* at 762 (recognizing need to allow foreign

10

defendants to structure their conduct in manner that will provide minimal assurance that they will not be subject to suit).

In its petition, the System stated that Deutsche "is a corporation organized under the laws of the State of Delaware with its principal place of business in New York, New York." Accordingly, the System's pleadings failed to establish that either of the prime locations for general jurisdiction were in Texas. Although the System acknowledges that neither of the paradigmatic locations are involved here, it asserts that the Court in *Daimler* did not foreclose the possibility that general jurisdiction could be established in other locations in certain circumstances and asserts that many of its discovery requests will establish whether this case presents a situation in which general jurisdiction might be established in a location other than the principal place of business or the place of incorporation.

Although the System correctly points out that the Court did not foreclose the possibility that "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," the Court also cautioned that this could only occur, if at all, in a truly "exceptional case." *Id.* at 761 n.19. As an example of what could constitute this type of exceptional case, the Court pointed to a case in which a defendant corporation was incorporated in the Philippines but ceased its operations in the Philippines during World War II. *Id.* at 756, 761 n.19 (discussing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952)). After the company ceased its operations abroad, the president of the company moved to Ohio "where he kept an office, maintained the company's files, and oversaw the company's activities." *Id.* at 756. Ultimately, the

11

Court decided that general jurisdiction could be established in Ohio and explained that as a result of the move, Ohio was the corporation's principal place of business even if only temporarily so. *Id.*

In light of this exception, the System asserts that the district court did not abuse its discretion by allowing the System the opportunity "to conduct limited jurisdictional discovery on whether Deutsche . . . is essentially at home in Texas" and, therefore, whether the requirements of general jurisdiction are met. However, the System did not make any allegations in its petition that suggests that Deutsche's business practices in Texas would fall within the narrow exception crafted by the Supreme Court. This seems particularly true given that the System's petition states that Deutsche's current principal place of business is in New York.

Moreover, although consideration of the System's allegations in its petition concerning Deutsche would seem sufficient to end the inquiry, we note that the information sought by the System through its discovery requests would not seem capable of establishing the predicate necessary to subject Deutsche to general jurisdiction in Texas. Even if the requested discovery could establish extensive business practices by Deutsche in Texas, the requests do not seek information regarding whether Deutsche should be subject to general jurisdiction in Texas because Deutsche, either temporarily or permanently, ceased its business operations in New York or Delaware and moved them to Texas or seek information that might otherwise establish an exceptional case in which Deutsche's activities would render it at home in Texas. *See Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432, 434 (5th Cir. 2014) (providing that it is "incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business" and that trial court did not abuse its discretion by denying request for jurisdictional discovery

12

because evidence sought would not establish general jurisdiction); *see also Locke v. Ethicon Inc.*, No. 4:14-CV-2648, 2014 U.S. Dist. LEXIS 158416, at *13-14 (S.D. Tex. Nov. 10, 2014) (mem. op.) (concluding that argument regarding revenue earned by corporation "cannot withstand the holding in *Daimler*"); *Spir Star AG v. Kimich*, 310 S.W.3d 868, 874 (Tex. 2010) (providing that if sales alone could establish general jurisdiction, foreign company could be sued in state for labor practices having nothing to do with that state).

For these reasons, we believe that the district court abused its discretion by granting the System's motion to compel discovery regarding general jurisdiction.

*Specific Jurisdiction*

In its mandamus petition, Deutsche contends that the district court abused its discretion by ordering discovery because the System "failed to allege any cognizable theory of specific jurisdiction."

"A court has specific jurisdiction over a defendant if its alleged liability arises from or is related to an activity conducted within the forum." *Spir Star*, 310 S.W.3d at 873; *see Daimler*, 134 S. Ct. at 754. Unlike general jurisdiction, specific jurisdiction may be established by sporadic contacts by a defendant if the claim arises from those contacts with the forum state. *Spir Star*, 310 S.W.3d at 873. To satisfy due-process guarantees, a nonresident must generally have minimum contacts with the state to ensure that the suit does not offend traditional notions of substantial justice and fair play. *Walden*, 134 S. Ct. at 1121; *OAO Gazprom*, 414 S.W.3d at 150. In other words, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 134 S. Ct. at 1121. That "relationship must arise out of contacts that the 'defendant *himself*'

13

creates with the forum State," *id.* at 1122 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)), and the defendant can only "be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State," *id.* at 1123 (quoting *Rudzewicz*, 471 U.S. at 475). Accordingly, "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction," *id.*, but "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact," *id.* at 1122. "A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco*, 278 S.W.3d at 338 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). Stated differently, "[s]pecific jurisdiction is appropriate when (1) the defendant's contacts with the forum state are purposeful, and (2) the cause of action arises from or relates to the defendant's contacts." *Spir Star*, 310 S.W.3d at 873.

In its petition, the System generally alleged all of the financial institutions that were named as defendants "underwrote and materially misrepresented the nature, quality, characteristics, and risk profile" of the securities "in an effort to maximize profits at all costs," that the misrepresentations caused the securities "to receive artificially inflated credit ratings," and that the System purchased those securities "based upon . . . detailed representations in public offering documents that caused those securities to be highly rated as safe and secure." In addition, the System argued that it purchased securities from "most" of the defendants.

14

Moreover, the System asserted that the district court had jurisdiction over all of the named defendants because the financial institutions involved "purposefully availed themselves of the privileges and benefits of conducting activities in Texas" and poisoned "the stream of commerce with these toxic products" knowing "that the effects of their fraudulent conduct would reach Texas." Furthermore, the System alleged that the institutions "intentionally worked to establish a secondary market for their" securities and "with full knowledge that the" securities "would be purchased and sold in Texas based on their representations."

Although Deutsche notes that the System made general allegations regarding all of the financial institutions, it urges that the specific allegations against Deutsche reveal that the System has not met its burden. In the allegations targeted toward Deutsche, the System asserted that Deutsche failed to adequately assess the securities and misrepresented the quality of the securities to induce investors to purchase them, but the System did not allege that it purchased any security from Deutsche or that the System had any communication with Deutsche regarding the securities. *See Lamar v. Poncon*, 305 S.W.3d 130, 138 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (concluding that plaintiff was not entitled to pursue jurisdictional discovery regarding specific jurisdiction when assurances that plaintiff relied on were not made by foreign company but by Texas company). In addition, the allegations do not assert that Deutsche had any role in creating the securities that the System purchased and instead assert that Deutsche was an underwriter for some of the securities. Further, the System did not allege that Deutsche performed any action in Texas.

Moreover, when Deutsche filed its special appearance, it attached an affidavit from one of its employees who is charged with reviewing historical loan sales and the underwriting of

15

residential-mortgage-backed securities. According to the affidavit, Deutsche purchased securities and later sold them to initial investors but did not sell any of the securities to the System. In other words, according to the affidavit, if the System did purchase securities, "it did not buy them from" Deutsche. Furthermore, the System has not disputed any of the statements contained in the affidavit. *Cf. id.* at 135-36, 139-40 (concluding that even though foreign resort company submitted affidavit establishing that it did not have sufficient contacts with Texas, trial court erred by refusing to allow limited jurisdictional discovery regarding general jurisdiction because plaintiff submitted affidavits and testimony contradicting company's affidavit by showing, among other things, that resort gave Texas-based travel agency travel brochures for marketing purposes, that resort derived significant amount of business through its marketing efforts with travel agency, that travel agency and resort "worked together to book trips for Texans to the resort," and that resort gave travel agent free trip to inspect property).

In light of the preceding, Deutsche contends that the System failed to meet its burden of making allegations sufficient to warrant discovery regarding specific jurisdiction and that the affidavit that Deutsche filed negated all bases for jurisdiction. *See Kelly v. General Interior Constr., Inc.*, 301 S.W.3d 653, 659-60 (Tex. 2010) (determining that live pleadings contained no allegations that any wrongdoing occurred in Texas and that defendants satisfied burden of negating all bases of jurisdiction by "proving that they do not live in Texas"). Furthermore, Deutsche contends that the System cannot establish personal jurisdiction through the fact that the securities were purchased by the System after they were placed in the stream of commerce by Deutsche. In particular, Deutsche notes that the supreme court has determined that "the mere fact that goods have traveled into a state,

16

without more, does not establish the minimum contacts necessary to subject" a defendant "to personal jurisdiction within" this State. *Zinc Nacional, S.A. v. Bouche Trucking, Inc.*, 308 S.W.3d 395, 397 (Tex. 2010). Rather, additional conduct is required to show that a defendant intended to serve the forum state. *Asahi Metal Indus. Co. v. Superior Ct. of Cal., Solano Cnty.*, 480 U.S. 102, 112 (1987); *see Zinc Nacional*, 308 S.W.3d at 397 (explaining that fact that seller knew product would end up in forum state is not enough to establish jurisdiction if seller made no attempt to market goods in state); *see also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 934 F. Supp.2d 1219, 1236-38 (C.D. Cal. 2013) (rejecting idea that underwriting security constituted purposeful availment when no facts or allegations suggested that company acted in Nevada, that company targeted its activities towards Nevada, or that company knew securities would be sold in Nevada).

In its response to the petition for writ of mandamus, the System contends that the district court correctly determined that jurisdictional discovery was warranted because the requests are "possibly material to establishing personal jurisdiction." *Cf. Barron v. Vanier*, 190 S.W.3d 841, 849, 853 (Tex. App.—Fort Worth 2006, no pet.) (concluding that trial court abused its discretion by denying "motion for continuance to conduct discovery on personal jurisdiction"). Although the System acknowledges that placement of a product into the stream of commerce, on its own, is insufficient to establish personal jurisdiction, it asserts that the Supreme Court has determined that placement of a product into the stream of commerce while also "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor . . . in the forum State" will suffice to create personal jurisdiction. *See Asahi*, 480 U.S. at 112; *Spir Star*, 310 S.W.3d at 873. Moreover, the System contends that its personal-jurisdiction discovery requests were

17

premised on those types of activities. In particular, the System notes that it sought information regarding marketing materials directed to the System concerning the securities, communications directed to the System addressing the securities, travel undertaken by Deutsche employees to Texas relating to the securities, offices in Texas opened by Deutsche to aid in selling the securities, work performed by Deutsche employees in Texas concerning the securities, efforts made by Deutsche to create a secondary market in Texas for the securities, distribution of the securities at issue, and any communication made to or received from a Texas governmental entity, including the Texas State Securities Board, concerning the securities.[2] Moreover, the System insists that those requests pertain to Deutsche's contacts with Texas and have a substantial connection to its claims. Accordingly, the System urges that the district court did not abuse its discretion by granting its motion to compel and by denying Deutsche's request for a protective order.

However, given that Deutsche filed an affidavit from one of its employees establishing that Deutsche did not sell any securities to the System, that the System did not contest that assertion, and that the System has not alleged or shown any minimum contacts by Deutsche that would ensure that exercising jurisdiction over Deutsche would not offend traditional notions of substantial justice and fair play, we must conclude that the district court abused its discretion by authorizing the discovery requests relating to inquiries regarding specific jurisdiction. *See Covington Marine Corp.*

---

[2] We note that much of the information sought by the System is as available to the System as it is to Deutsche, particularly information regarding marketing materials sent by Deutsche to the System and regarding any communications made by Deutsche to the System concerning the securities; however, the System did not include in its request for a continuance any affidavit or evidence addressing those topics. *See Lamar v. Poncon*, 305 S.W.3d 130, 140 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (noting when deciding that jurisdictional discovery was warranted that plaintiff produced affidavits containing information relevant to jurisdictional inquiry).

*v. Xiamen Shipbuilding Indus. Co.*, 504 Fed. App'x 298, 303 (5th Cir. 2012) (concluding that "general allegations" fell short of specific facts needed before jurisdictional discovery may be permitted); *cf. General Interior*, 301 S.W.3d at 661 (dismissing claims after determining that plaintiff's pleadings lacked any "Texas-specific allegations" and that defendants "negated all jurisdictional bases by proving that they do not live in Texas"). *But see Barron*, 190 S.W.3d at 849, 851, 853 (concluding that trial court abused its discretion in denying motion for continuance in order to seek jurisdictional discovery when plaintiff sought, among other things, jurisdictional discovery regarding defendant's business dealings in Texas, communication with Texas residents, advertising in Texas, and Texas clients because some of requests "relate to specific jurisdiction").

Requiring a foreign defendant to respond to the types of extensive personal-jurisdiction requests at issue in this case when the plaintiff has made no allegation that the defendant has the type of minimum contacts in the forum needed to satisfy due-process concerns would allow for improper fishing expeditions and could subject foreign defendants to those types of requests in any state where one of their products came to rest after floating through the stream of commerce. *Cf. In re National Lloyds*, 449 S.W.3d at 489 (explaining that allowing plaintiffs to comb through defendant's records in hopes of finding additional claimants amounts to impermissible fishing expedition).

For these reasons, we conclude that the district court abused its discretion by granting the System's motion to compel discovery requests pertaining to specific jurisdiction.

## CONCLUSION

Having determined that the district court abused its discretion by authorizing the jurisdictional discovery at issue and that Deutsche does not have an adequate appellate remedy, we

conditionally grant Deutsche's petition for writ of mandamus, instruct the district court to vacate its order denying Deutsche's request for a protective order and granting the System's motion to compel, and direct the district court to enter an order granting Deutsche's request for a protective order and denying the System's motion to compel. The writ will issue only if the district court fails to comply.

_____

David Puryear, Justice

Before Justices Puryear, Pemberton, and Bourland
  Dissenting Opinion by Justice Pemberton

Filed:  July 3, 2015

20