**Petition for Writ of Mandamus Denied and Majority and Dissenting Opinions filed February 27, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00852-CV

## IN RE EURECAT US, INC., Relator

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**133rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-25700**

## MAJORITY OPINION

Eurecat US, Inc. has filed a petition for writ of mandamus, asking this court to compel the Honorable Jaclanel McFarland, presiding judge of the 133rd District Court of Harris County, to vacate her protective order dated September 20, 2013. Because Eurecat has not established an inadequate remedy by appeal, we deny the petition for writ of mandamus.

## BACKGROUND

Eurecat operates in the specialized field of catalyst activation, providing technical services to refineries and chemical plants throughout the world. Eurecat sued the real parties in interest, Soren Marklund, Douglas Wene, and Chem32, LLC. Marklund is the former president of Eurecat. He left the company in 2011 to form Chem32 with Wene, who had been a plant manager at a Eurecat facility in Pasadena. Chem32 directly competes with Eurecat by offering similar catalyst activation services.

In its suit, Eurecat asserted causes of action for breach of fiduciary duty, misappropriation of trade secrets, and unfair competition, among others. Eurecat alleged that Marklund and Wene decided to form a competing business when they were still employed at Eurecat. According to Eurecat, Marklund and Wene withheld certain business opportunities and solicited clients away from Eurecat for the benefit of their new venture. Eurecat further alleged that Marklund and Wene stole proprietary information from Eurecat, which they used to operate Chem32.

The real parties filed a counterclaim, asserting that Eurecat was a monopolist under the Texas Free Enterprise and Antitrust Act. They alleged that Eurecat initiated this "sham litigation" to suppress competition in the market.

The trial court signed an agreed temporary injunction requiring the real parties to surrender any documents and intellectual property belonging to Eurecat. Under the injunction, the real parties were expressly permitted to continue using their own skill and knowledge to compete with Eurecat's business. Both parties also executed a Rule 11 confidentiality agreement, wherein they promised not to use any information obtained during the discovery process, except for use in the course of the litigation.

During discovery, the real parties produced documents showing that, in late 2010, Marklund had approached Haldor Topsoe, a Swedish corporation, to help secure financing for his new company. At the time of this contact, Marklund was still president of Eurecat, and Haldor Topsoe was doing millions of dollars worth of business with Eurecat. By the time of suit, however, Haldor Topsoe had turned to Chem32 for its catalyst activation needs.

After production of this discovery, Eurecat's attorney contacted Haldor Topsoe directly and expressed serious concerns about any ongoing relationship it may have with the real parties. Eurecat advised Haldor Topsoe that it had already obtained evidence showing that the real parties had used Eurecat's proprietary information in the performance of their new business. Eurecat even provided Haldor Topsoe with the forensic analysis of its computer expert to support its claim of misappropriation. Eurecat opined that, under these circumstances, it would be "inappropriate" and "tantamount to participating in the misappropriation" for Haldor Topsoe to use Chem32 for future projects. Eurecat then inquired whether Haldor Topsoe would be willing to cease doing business with Chem32 in exchange for a covenant not to sue. Haldor Topsoe agreed, resulting in substantial losses to the real parties. The real parties subsequently amended their counterclaim to include causes of action for defamation and business disparagement.

Apparently suspecting that Marklund may have approached other clients in addition to Haldor Topsoe, Eurecat moved to compel the production of documents pertaining to all of Chem32's customers and sales. The real parties opposed such discovery, claiming that it was a protected trade secret. The real parties also filed a motion for protection, arguing that they needed to prevent disclosure of their client lists out of fear that Eurecat would engage those clients in disparaging communications.

The trial court conducted two hearings on the discovery motions, the first on March 25 and the second on April 9. At the first hearing, the trial court proposed an equitable remedy to the parties' dispute. Instead of compelling Chem32 to produce its own list of clients, the trial court directed Chem32 to examine a list of Eurecat's existing clients and identify whether Chem32 had done business with any of them. The real parties moved for "a very strict protective order" to ensure that Eurecat would not harass Chem32's clients like it had done with Haldor Topsoe. The trial court responded that Eurecat was bound by the confidentiality agreement, and that the real parties would have "a whole new lawsuit" if Eurecat decided to breach that agreement.

At the second hearing, the real parties renewed their objection to Eurecat's attempts to discover Chem32's clients. The real parties alleged that Eurecat's contacts had already caused Haldor Topsoe to cease doing business with them. They were afraid that contacts with any other customers would achieve the same result and effectively put them out of business. The trial court ordered Eurecat not to disclose "copies of depositions, affidavits, [and] different things that have been used in this litigation." Then, without expressly disturbing its previous order, the trial court directed Eurecat, "Don't contact any of the customers."

Eurecat filed a motion for status conference, seeking in part to clarify the trial court's oral order. Eurecat asserts that this motion was heard on August 19, but that the trial court did not rule on the issue of customer discovery.

On September 18, Eurecat notified the real parties by letter that it intended to send subpoenas to eighty-nine businesses, which Eurecat represented as being its own customers. Eurecat indicated that this discovery was intended to find information pertaining to its claims, specifically breach of fiduciary duty, and the

4

real parties' counterclaims. Eurecat asked Chem32 to relay any objections to the proposed subpoenas. On September 19, the real parties requested an emergency order prohibiting Eurecat from conducting third-party customer discovery. The real parties argued that Eurecat's actions were in direct violation of the trial court's oral order, and that allowing this third-party discovery would "destroy Chem32's business."

The trial court conducted a hearing on the emergency request on September 20. Without producing any witnesses, the real parties argued that this is the "turn around season" in the market for catalyst activation. During this time of year, industrial consumers solicit bids for the activation of catalyst. The real parties worried that if Eurecat's third-party discovery were allowed, subpoenaed customers would follow the example of Haldor Topsoe and refuse to consider bids from Chem32.

Eurecat contended that there were legitimate reasons for pursuing third-party discovery, as the trial court had acknowledged during the April 9 hearing.[1] Eurecat urged the trial court to permit third-party discovery because it needed to investigate whether the real parties were conspiring to steal Eurecat's customers before they left the company. Eurecat specifically referred the trial court to Chem32's business plan, wherein the real parties had indicated that they would target approximately nine of Eurecat's customers.

The trial court expressed concern, as Chem32's business plan did not list all of the eighty-nine businesses listed in Eurecat's letter. The real parties responded that the fact that they may have done business with common customers is no evidence of breach of fiduciary duty. The real parties also argued that this third-

---

[1] At the earlier hearing, the trial court put forth several hypothetical scenarios.

party discovery was unwarranted because the real parties had already produced documents for the period through May 2012, several months after Marklund and Wene had left Eurecat, and these documents showed no contact by the real parties with any Eurecat customer other than Haldor Topsoe.

Eurecat countered that there was still a need for discovery because of the real parties' antitrust counterclaim. Eurecat argued that it needed to contact its customers to establish the relevant market and prepare a defense to whether it is a monopolist in that market. The trial court responded that establishing the market was the real parties' burden, and the real parties stated that they would establish the market through the testimony of Eurecat's own officers. The real parties also stipulated that they would limit their damages to the lost business relationship with Haldor Topsoe.

The trial court denied the third-party discovery, finding that there was a potential and significant harm of ruining Chem32's business that outweighed the benefit of permitting the discovery. The court then granted the real parties' protective order, which provides that Eurecat "may not serve discovery on any customers or potential customers of catalyst activation services identified in the letter from [Eurecat's counsel] to [the real parties' counsel] dated 9/18/2013 which is contained in the Court's record, other than Haldor Topsoe, Inc." Eurecat's mandamus petition challenges this order.

## MANDAMUS STANDARD

Mandamus is appropriate when the relator demonstrates that the trial court clearly abused its discretion and there is no adequate remedy by appeal. *See In re Reece*, 341 S.W.3d 360, 364 (Tex. 2011) (orig. proceeding). On mandamus review of factual issues, a trial court will be held to have abused its discretion only if the

6

relator establishes that the trial court could have reached but one decision, and not the decision it made. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). Mandamus review of legal issues is not deferential. A trial court abuses its discretion if it clearly fails to analyze the law correctly or apply the law to the facts of the case. *See In re Cerberus Capital Mgmt.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).

The adequacy of an appellate remedy must be determined by balancing the benefits of mandamus review against the detriments. *See In re Team Rocket, L.P.*, 256 S.W.3d 257, 262 (Tex. 2008) (orig. proceeding). Because this balance depends heavily on circumstances, it must be guided by analysis of principles rather than simple rules that treat cases as categories. *See In re McAllen Med. Ctr., Inc.*, 275 S.W.3d 458, 464 (Tex. 2008) (orig. proceeding). When evaluating the benefits and detriments, we consider whether mandamus will preserve important substantive and procedural rights from impairment or loss. *See In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136 (Tex. 2004) (orig. proceeding). We also consider whether mandamus will "allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments." *Id.* Finally, we consider whether mandamus will spare the litigants and the public "the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings." *Id.*

## ANALYSIS

We afford the trial court broad discretion in the granting of protective orders. *See Masinga v. Whittington*, 792 S.W.2d 940, 940 (Tex. 1990) (orig. proceeding). To justify a protective order, the party resisting discovery must present facts showing a particular, specific, and demonstrable injury. *See Garcia v. Peeples*, 734

S.W.2d 343, 345 (Tex. 1987) (orig. proceeding). The party resisting discovery cannot simply make conclusory allegations that the requested discovery is unduly burdensome or duplicative. *See Brewer & Pritchard, P.C. v. Johnson*, 167 S.W.3d 460, 466 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Some evidence must be produced in support of the request for a protective order. *Id.* If this evidentiary burden is not satisfied and the requested discovery falls within the scope of discovery permitted by the rules of civil procedure, then the trial court abuses its discretion by entering the protective order. *Id.*

Eurecat argues that the trial court abused its discretion because the real parties produced no evidence that the requested discovery would destroy Chem32's business. Yet even if the evidence regarding Eurecat's contacts with Haldor Topsoe were insufficient to support the protective order (an issue we do not decide), Eurecat must still establish that it has no adequate remedy by appeal in order to be entitled to mandamus relief. We conclude that Eurecat has not done so.

"Appeal from a trial court's discovery order is not adequate if: (1) the appellate court would not be able to cure the trial court's error on appeal; (2) the party's ability to present a viable claim or defense is vitiated or severely compromised; or (3) missing discovery cannot be made a part of the appellate record." *In re Ford Motor Co.*, 988 S.W.2d 714, 721 (Tex. 1998) (orig. proceeding). Eurecat does not rely on the first category, which includes errors such as an order to produce privileged documents. Regarding the second category, Eurecat's petition offers several reasons why it contends this third-party discovery is relevant and necessary to present viable claims and defenses. Eurecat did not present most of those reasons to the trial court, however, so we do not consider

8

them in reviewing its order.[2] Eurecat did argue in the trial court that it was entitled to discover whether Chem32 had solicited other Eurecat customers, but Eurecat has not clearly established that the trial court's interlocutory protective order prevents it from pursuing other avenues of discovery in support of its claim for damages resulting from any breach of fiduciary duty. *See id.*

Our dissenting colleague focuses on Eurecat's alleged need for Chem32's customer information. This focus is misplaced because the protective order under review does not disturb the trial court's prior order for Chem32 to identify which of Eurecat's existing clients it had done business with—an order that is not challenged here. The question of what other discovery might be proper once Chem32 identifies those clients was not before the trial court and thus is not before this court.

As to the third category, Eurecat asserts that "[u]nless mandamus relief is granted, all of the discovery that [Eurecat] has been preemptively and wholly excluded from taking will not be part of the trial court's record, and a reviewing court will not be able to determine the effect of its absence." This brief and summary assertion does not establish that appeal is an inadequate remedy. In evaluating an argument regarding the third category, "the court must carefully consider all relevant circumstances, such as the claims and defenses asserted, the type of discovery sought, what it is intended to prove, and the presence or lack of other discovery, to determine whether mandamus is appropriate." *Walker*, 827 S.W.2d at 844. Here, it is unclear from the record before the trial court precisely what Eurecat's discovery from eighty-nine other businesses is intended to prove,

---

[2] We do not read the trial court's protective order as precluding all third-party discovery, nor as rejecting the new reasons for third-party discovery that Eurecat presents for the first time in its mandamus petition.

and Eurecat has not clearly established that other discovery is unavailable to support its claims and defenses. Accordingly, we conclude that Eurecat has failed to establish its entitlement to mandamus relief.

## CONCLUSION

We deny Eurecat's petition for writ of mandamus and all other requests for relief currently pending before this court.

/s/    Brett Busby
        Justice

Panel consists of Justices Jamison, McCally, and Busby. (McCally, J., dissenting).