**Petition for Writ of Mandamus Denied and Majority, Dissenting, and Concurring Opinions filed June 5, 2014.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-14-00365-CV**

---

**IN RE EURECAT US, INC., Relator**

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**133rd District Court**
**Harris County, Texas**
**Trial Court Cause No. 2012-25700**

---

## DISSENTING OPINION

Eurecat returns to us with this second petition for writ of mandamus arising from the trial court's Rule 192.4 protective order. Previously, as the dissenting

justice, I urged that the trial court's order[1] is an impermissible discovery injunction. *In re Eurecat US, Inc.*, 425 S.W.3d 577, 584 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding) (McCally, J., dissenting). The panel majority, on the other hand, found that it was not clear that the trial court's order prohibited the subject customer discovery. *See id.* at 583 & n.2 (majority opinion). Therefore, the parties returned to the trial court where Eurecat sought reconsideration of the order. The trial court reaffirmed its order prohibiting the customer discovery. Eurecat seeks mandamus relief arguing, once again, that Real Parties have supplied no evidence to support their request for an order forbidding customer discovery—discovery that goes to the heart of Eurecat's claims and defenses.[2] By the petition and response, the parties agree that the trial court has forbidden Eurecat from taking discovery *from Eurecat customers*.[3] Today, the majority nonetheless denies Eurecat's second petition for writ of mandamus,

---

[1] The order provides that "Eurecat U.S., Inc. may not serve discovery on any customers or potential customers of catalyst activation services identified in the letter from Mr. Touchstone to Mr. Escobar dated September 18, 2013."

[2] Real Parties attempt to undercut the nature of the harm from an order prohibiting Eurecat's discovery on customers by stipulating that they will not seek antitrust damages from Eurecat pertaining to those customers. Real Parties do not state that they have dismissed their antitrust claims, nor does the record reflect such. As with Real Parties' assurances that they did not solicit Eurecat customers—"we promise"—Real Parties promise that Eurecat doesn't need this discovery because when it comes time to offer evidence or ask the jury to fill in the damage blanks, they promise they will not include anything about other customers. Denial of discovery that goes to the heart of a case—as pled—renders an appeal inadequate. *See Walker v. Packer*, 827 S.W.2d 833, 843–44 (Tex. 1992). Thus, the "we promise" handling of discovery defies established authority permitting discovery based upon **pleadings**, not promises.

[3] My concurring colleague attempts to buttress the discovery injunction with reference to Real Parties' argument on trade secrets. However, to the extent that such argument previously had merit, it no longer does as the subject of the forbidden discovery is a list of customers of both Eurecat and Real Parties that is known to both parties and, thus, not a secret. To the extent that Real Parties are concerned that Eurecat's undrafted, unsent discovery might ultimately implicate Real Parties' other trade secrets, a prospective injunction on discovery is not an appropriate prophylactic measure.

finding that Eurecat has not established itself entitled to relief. Again, I respectfully disagree.

In addition to the reasons I previously stated for my belief that Eurecat's petition for writ of mandamus should be granted, *see id.* at 587–88 (McCally, J., dissenting), I add the following:

**Real Parties have still provided no evidence
to support a Rule 192.4 Protective Order.**

Real Parties urge that the trial court's Rule 192.4 protective order is supported by evidence. And, Real Parties urge that the trial court conducted an appropriate balance to support the order as reflected in the following excerpt from the hearing after our decision on the prior petition:

> MR. HOEG [counsel for Eurecat]: [A]s Justice McCauley [sic] said, [we do] not have to take their word for it, especially once we have already seen that they haven't been entirely forthcoming.
>
> THE COURT: Well, but Mr. Hoeg, in all fairness, Justice McCauley [sic] didn't have maybe all the background of the letters and discussions that you actually had with Haldor Topsoe, which I think I maybe gently said to you may have been a little over the top.
>
> MR. HOEG: Absolutely. You're correct. Although, she did have some of that, but my point is that's only—
> . . . .
> THE COURT: [W]hen you've got a whole big list and you're talking about possible damage to either or both of you when you're both countersuing each other basically, saying you're going to damage my business. If you intimidate of threaten or at least insinuate that they're [Real Parties' customers] going to be

3

brought in or we're going to have a lawsuit against them, and that's when you have to do a covenant not to sue, then, you know that's a whole other balancing act that the Court has to do, the harm versus the good, you know, which is no enviable job for a judge; and I understand the Court of Appeals looks at the record and doesn't get to see the inflection, the body language, the believability, the everything of all the witnesses and the attorneys arguing those points that the trial court has. Anyway, your motion is denied.

This excerpt, say Real Parties, shows the balancing that the trial court performed—this is the evidence considered. Real Parties point to no other evidence and there is none in this record.

Thus, we know that the trial court balanced Eurecat's alleged "threats and intimidation" of a common customer against Eurecat's right to request discovery from other common customers. But, Rule 192.4(b) compels a trial court to balance "the burden or expense of the proposed discovery" against "its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues." Tex. R. Civ. P. 192.4(b). Therefore, the trial court did not perform a balancing under Rule 192.4(b).

If Real Parties wanted the trial court to enter an order forbidding Eurecat's discovery on common customers on the belief that Eurecat had threatened or intimidated a potential witness, Real Parties should have sought relief for discovery abuse. Texas Rule of Civil Procedure 215.3 addresses abuses of the discovery process: "If the court finds a party is abusing the discovery process in seeking, making or resisting discovery . . . , then the court in which the action is pending may, after notice and hearing, impose any appropriate sanction authorized

4

by paragraphs (1), (2), (3), (4), (5) and (8) of Rule 215.2(b)." Tex. R. Civ. P. 215.3. And, the very first sanction authorized is "(1) an order disallowing any further discovery of any kind or of a particular kind by the disobedient party." Tex. R. Civ. P. 215.2(b)(1). However, before the trial court may issue such a discovery sanction, it must consider a sanction less than a total prohibition of discovery. *See, e.g.*, *Cire v. Cummings*, 134 S.W.3d 835, 838 (Tex. 2004). Real Parties did not invoke Rule 215.3 and do not attempt to uphold the trial court order on that basis.

Therefore, I respectfully dissent to this court's denial of Eurecat's request for mandamus relief.

 

 

 

_____

Sharon McCally
Justice

 

 

Panel consists of Justices Jamison, McCally, and Busby. (Busby, J., concurring) (McCally, J., dissenting).