ACCEPTED
01-15-00530-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
6/29/2015 2:09:45 PM
CHRISTOPHER PRINE
CLERK

## NO. 01-15-00530-CV

## IN RE: SUNSET NURSING HOME, INC.

**Relator,**

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

6/29/2015 2:09:45 PM

CHRISTOPHER A. PRINE
Clerk

## Original Proceeding from the 239th District Court
## Brazoria County, Texas
## Honorable Pat Sebesta, Presiding

## REPLY MANDAMUS

Brandy R. Manning
State Bar No. 24029703
**BURLESON LLP**
223 W. Wall Street, Suite 400
Midland, Texas 79701
bmanning@burlesonllp.com
Telephone: 432.253.8603
Facsimile: 432.253.8601

Felicia L. Harris
State Bar No. 24002438
fharris@burlesonllp.com
**BURLESON LLP**
700 Milam Street, Suite 1100
Houston, Texas 77002
Telephone: 713.358.1700
Facsimile: 713.358.1717

1

**TO THE HONORABLE COURT OF APPEALS:**

The Grethers'[1] chief complaint is that trial is currently set for August 2015. The Responses' theme is expediency—"a trial court has a duty to schedule its cases in such a manner as to expeditiously dispose of them."[2] Response at 26. They ask this Court to reward their unrelenting obstruction of Sunset's diligent search for the truth by forcing Sunset to trial against only half of the responsible parties and without the evidence to which it is entitled under the Rules. Justice and fairness must not yield to expediency. Without mandamus relief, trial is not "expedient"—it is a waste of time.

## I.      The Grethers' procedural protests are without merit.

Rather than meet Sunset's substantive arguments, the Grethers assail the form of Sunset's Petition, particularly counsel's affidavit proving up record documents and a handful of facts not evident from the written record. Critically, the Grethers do not question the authenticity of any record document, nor do they point this Court to any unsupported factual allegation. Counsel's signature alone substantiates her good faith belief that every statement has factual and legal support. TEX. R. CIV. P. 13 (Attorney's signature certifies that she has read the

---

[1] Sunset replies to both Responses filed and will refer to Coleman and the Grethers collectively as "the Grethers" unless otherwise noted.

[2] Response at 26. The case cited holds that a trial court had discretion to dismiss a will contest when a party with ample notice failed to timely post a cost bond. *Clanton v. Clark*, 639 S.W.2d 929, 931 (Tex. 1982).

pleading, motion, or other paper and that she believes, after reasonable inquiry, that the motion is not groundless or brought in bad faith (*i.e.*, has factual and legal support)). The matter is easily resolved by counsel's amended supporting affidavit. *See In re Cahill*, 267 S.W.3d 104, 106 (Tex. App.—Corpus Christi 2008, orig. proceeding) (even a defect in verification is subject to correction, and does not preclude the Court's consideration of a mandamus petition).

Similarly, the Grethers assail the record, and ask this Court to disregard any document not filed with the Court. Sunset filed an exhaustive record, containing sworn copies of key documents either filed with the court and/or providing the basis for its Petition. It also filed a short appendix, containing copies of the most critical record documents as well as the text of Rule 63, for the court's convenience. The purpose of the rules regarding the appendix and record are to provide the court with both evidentiary support for every factual allegation made and an expedient method to review these documents. *See, generally*, TEX. R. APP. P. 52. Sunset has accomplished both goals and asks the Court to consider the sworn documents provided as it deems appropriate in reviewing Sunset's petition.

I.    **This Court should issue mandamus compelling the trial court to vacate its order striking Sunset's amended pleadings.**

a.  **The trial court clearly abused its discretion in striking Sunset's amended pleadings.**

3

The Grethers agree: "A trial court has no discretion in determining what the law is or applying law to the facts." Response at 10. Thus, "a trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to constitute a clear and prejudicial error of law, or if it clearly fails to correctly analyze or apply the law." *Id*.

Despite their dissatisfaction with Sunset's recitation of the facts, the Grethers do not deny key facts.

- The *only* docket control order entered was based on an October 2014 trial date. R59.

- The trial court, in mid-2014, continued the first trial setting (October 2014). R1A.

- Sunset proposed a DCO based on an April 13, 2015 trial date (the second trial setting)—it included a January 30, 2015 deadline to amend pleadings. R64.

- In response, the Grethers confirmed their approval of the proposed pleadings deadline:

  **"The DCO dates looked ok to me. I'll get you a signature on an agreed order to submit the dates to the court."**

  *Id*.; *See* also R75 at Exhibit P. This October 2014 email exchange was months before the exchange cited in the Response. *Compare* R64 to R73.

- The December email exchange cited in the Response occurred *after* Coleman's deposition and just before Richards', when the Grethers realized that Sunset either knew or would soon confirm facts to support pleadings against all of the Grether parties, including Coleman. Until then, the Grethers acted consistently with the parties'

4

and court's understanding that DCO deadlines had been lifted.[3] *See, e.g.,* R75 and Exhibits at P, Q, R (attached thereto).

- The Grethers contend that a deadline to amend pleadings "necessarily included amended pleadings adding parties." Response at FN52. Thus, an extended deadline to amend pleadings was also an extended deadling to add parties.

- Sunset amended pleadings in response to Coleman's and Richards' depositions, which were sought as early as Spring 2014, but delayed by the Grethers[4], and not obtained until near the end of the year.

- Sunset's 2014 filings (R105 and R35), deposition questions (R75 at Exhibit J), information the Grethers were gathering regarding the nursing home market in Southern Brazoria County in early 2011 (R111, 112, 113), and the Grethers' own actions during the change of control reveal the Grethers not only *could* have anticipated an antitrust claim – but *should* have anticipated it. *See Stephenson v. LeBoeuf*, 16 S.W.3d 829, 839 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (amendment not prejudicial on its face if could have anticipated it). The anticompetitive activity is at the heart of Sunset's case against all of the Defendants since there would have been no reason for RAI or Plantation (both non-operational) to sabotage the operations of the Sunset's facilities, except to benefit CVC, GHCF (and ultimately Richards and Stewart) which were each controlled by Ms. Richards and Ms. Stewart -- the sole owners of CVC, which now owns 99% of GHCF.

---

[3] Critically, the Grethers do *not* deny the trial court's statement lifting all deadlines in the DCO. Their objection is simply to the lack of a transcript from that hearing. A transcript—had one been created, Sunset would have included it in the Record—is not the only evidence of the Court's decision, however. The motion Sunset filed (R62) asking for a continuance and the lifting of all deadlines (which was granted, even though the Court did not sign an order), followed by the parties and the court's actions after that hearing, and the affidavit of Sunset's counsel (which the Grethers do not refute) are ample evidence of that decision.

[4] A summary of the discovery hurdles Sunset faced in 2014 are summarized in Sunset's Motion for Sanctions and the First and Second Supplement to that motion. *See* R35.

5

- Moreover, neither the Grethers nor Coleman presented evidence in the trial court below, nor argue here, that they were surprised or prejudiced by Sunset's April Amended Pleading. Further, because there is no docket control order in place, the deadline to amend pleadings still has not expired. TEX. R. CIV. P. 63.

The trial court abused its discretion because it clearly failed to correctly analyze or apply the law to these undisputed facts when it granted the Motion to Strike. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135 (Tex. 2004) Consider:

- Under Rule 63, parties may freely amend "at such time as not to operate as a surprise to the opposite party." TEX. R. CIV. P. 63.[5] Even if an amendment is filed within 7 days of trial or after a docket control deadline, leave shall be granted "unless there is a showing" of "surprise." *Id.*

  - Texas law is clear—continuing the trial date automatically vacates the DCO deadlines *unless the court expressly orders otherwise. See, e.g., Killam Ranch Properties, Ltd. v. Webb County*, 2008 WL 4958452, *4 (Tex. App.—San Antonio 2008, no pet.) (holding that continuance of more than 30 days nullifies deadlines in pretrial order, so that all deadlines are governed by the Rules of Civil Procedure); *Felker v. Petrolon, Inc.*, 929 S.W.2d 460, 467, n.9 (Tex. App.—Houston [1st Dist.] 1996, writ denied). The only case cited in the Response involved "floating" deadlines keyed off a continued trial date, a species of "unless the court expressly orders otherwise." As a matter of law, continuance of the October 2014 trial date nullified the June 2014 pleadings deadline.

---

[5] Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party. TEX. R. CIV. P. 63.

- Neither the Grethers nor Coleman made any showing of "surprise" in the trial court below. *See* R50 and R73 (Motion to Strike/Supplemental Motion to Strike). Nor could they—they do not deny Sunset's consistent assertions that this lawsuit is one between competitive nursing facility operators in Southern Brazoria County (R28 and R35) , their own evidence (R75, Exhibits N and O); Sunset's effort following Gayle Jacob's deposition to obtain evidence on the interrelationship between the Grether entities (R34 at 152-153), and their own witnesses' testimony that the "new" parties are new in name only R12 (Coleman depo testimony, billed GHCF for all Grether entities). *See Stephenson*, 16 S.W.3d at 839.

- Additionally, neither Sara Richards nor Amy Stewart could claim surprise. Contrary to the Grethers' arguments, both Ms. Richards and Ms. Stewart had been previously disclosed as a potential party in Sunset's disclosures. (R73) *Stephenson*, 16 S.W.3d at 839.

- Rule 91a permits a party to move to dismiss claims as "baseless," but includes a corresponding right to the opposing party to amend pleadings to meet the motion. TEX. R. CIV. P. 91a. Coleman filed a Rule 91a motion, Sunset filed the April amended pleading in response, and Coleman withdrew his motion. R74, R49, R76. To the extent the amended pleading addressed Coleman's motion, Coleman invited it and Sunset had an absolute right to file it.

- Rule 38 requires leave of court to add third-party defendants more than 30 days after a party files its original answer. TEX. R. CIV. P. 38. The Grethers do not deny that the "new" Grether parties are not third-party defendants, so that Rule 38 does not apply. The trial court's recent grant of Sunset's unopposed motion to restyle (its motion for realignment had already been granted) confirms the true character of the parties—Sunset is the only plaintiff and all other parties are simply defendants.[6] R114.

---

[6] The trial court's docket for Cause No. 72817 reflects the Court's decision. *See* http://publicbrazoria-county.com/PublicAccess/Search.aspx?ID=200&NodeID=100%2c110%2c200%2c210%2c120%2c130%2c140%2c220%2c230%2c240%2c250&NodeDesc=All+Courts.

Given established law and the undisputed facts, the trial court had no legal or factual basis for striking the January and April amended pleadings. And the Grethers recognize that "A trial court has no discretion in determining what the law is or applying law to the facts." Response at 10. Thus, the trial court clearly abused its discretion.

Coleman's only substantive response is that he is immune. But, the trial court has not yet had the opportunity to consider the facts underlying Sunset's decision to add him as a party. This Court need only decide whether Sunset's amended pleadings against Coleman and the other Grether parties was timely, not whether on the merits, Sunset can prevail.

**b. Sunset has no adequate remedy by appeal.**

Sunset has no adequate remedy by appeal. "Adequate" is the operative word, and our Supreme Court acknowledged that it "has no comprehensive definition; it is simply a proxy for the careful balance of jurisprudential considerations that determine when appellate courts will use original mandamus proceedings to review the actions of lower courts." *In re Prudential*, 148 S.W.3d 124, 137 (Tex. 2004). The court must consider both public and private interests, including preserving important substantive and procedural rights, allowing the appellate courts to give needed and helpful direction to lower courts, and sparing both private parties and the public the time and money utterly wasted, particularly

when such waste is easily avoided. *Id.* In short, an appellate remedy is "adequate" when the detriments of mandamus review outweigh the benefits; conversely, when the benefits of mandamus outweigh the detriments, an appellate remedy is inadequate. *Id.*

This determination is not an abstract or formulaic one; it is practical and prudential:

> *Walker* does not require us to turn a blind eye to blatant injustice nor does it mandate that we be an accomplice to sixteen trials that will amount to little more than a fiction. Appeal may be adequate for a particular party, but it is no remedy at all for the irreversible waste of judicial and public resources that would be required here if mandamus does not issue.

*Id.* Stated simply, whether an appellate remedy is "adequate" depends heavily on the circumstances presented. *Id.*

The court must consider not only the effect on individual parties, but the impact on the judicial system. Thus, where the trial court's complete lack of authority for its order, and the trial court had set up a proceeding that was likely to be "little more than a fiction," the burden on the judiciary justifies mandamus relief. *Id.* Likewise, when the trial court's error is clear and the correction simple, mandamus is appropriate. *Id.*

Here, the trial court's error is clear—there is simply no legal basis on which it could strike the Amended Pleadings. Furthermore, the correction is simple. Trial against all of the admittedly-intertwined Grether parties (including Coleman),

9

particularly when those parties have been present and participants in the proceedings to date, are represented by the same counsel[7] and witnesses, and where the claims against each turn on the same evidentiary facts and documents, causes no disruption to the process. Trial against only a portion of the interrelated parties, on the other hand, guarantees a retrial. Such is a complete waste of both private and judicial resources. The benefits of mandamus relief clearly outweigh any detriment. Sunset has no adequate remedy on appeal.

## II.    This Court should issue mandamus to compel the trial court to enforce full and fair discovery of the facts.

The Rules of Civil Procedure favor full and fair discovery of the facts, so that disputes may be decided by what those facts reveal, rather than what is concealed. *Axelson, Inc. v. McIlhany*, 798 S.W.2d 691, 693 (Tex. 1990). To that end, a party may discover *any* non-privileged information, whether admissible at trial, that is relevant or calculated to lead to the discovery of admissible evidence. *Id*. And key here—to justify protection from discovery, a party must present *facts* showing a particular, specific, and demonstrable injury should discovery proceed. *In re Eurecat US, Inc.*, 425 S.W.3d 577, 582 (Tex. App.—Houston [14th Dist.] 2014, orig. proceeding). Likewise, denial of discovery in the absence of *evidence*

---

[7] Coleman has been the Grethers' counsel since the 1990s and, in this proceeding, appeared at a number of depositions *before* he was named as a party. (R48a, R49a, R75). In this proceeding, the similarities in Coleman's Response to the Grethers' Response evidences the cross-pollination and collaboration continues between Coleman and the Grethers (and their respective counsel). *Compare* the Grethers' Response at 31-32 *with* Coleman's Response at 11-12 (almost word-for-word duplications).

substantiating a claim of privilege is a clear abuse of discretion. *Weisel Enters., Inc. v. Curry*, 718 S.W.2d 56, 58 (Tex. 1986). Only if the trial court finds that the likely harm from production outweighs the potential benefit to the requesting party may it deny discovery. *Id.*

Here, there has been no finding of harm to the Grethes. Instead, although the Grethers failed to present any *facts* showing a particular, specific, and demonstrable injury or *evidence* of privilege, the trial court denied discovery of information not only relevant, but potentially critical to Sunset's claims. Furthermore, the Grethers acknowledge that when, as here, the denial of discovery (1) vitiates or severely compromises the relator's ability to present a viable claim or defense, or (2) renders it impossible for an appellate court to evaluate the effect of the trial court's error because the undiscovered information cannot be made a part of the record, mandamus is appropriate—in other words, where these circumstances exist, there is no adequate remedy by appeal. Response at 12.

Sunset complained of six trial court discovery rulings. Interim actions of the trial court have changed things slightly, so Sunset will address each—including the Grethers Response—separately:

**1.** **"Policies and Procedures."** Following its *sua sponte* decision in May 2014 for *in camera* review, in September 2014, the trial court permitted Sunset's counsel to review these documents at the courthouse, but refused to allow

11

their use in the preparation of Sunset's case—counsel has been prohibited from using them in depositions, sending them to Sunset's expert, or utilizing them in pretrial proceedings or at trial.

The Grethers offer two justifications for the trial court's order—that the documents are "proprietary" and that their substance has no bearing on Sunset's claims. Neither contention has merit.

First, Amy Stewart described the "policies and procedures" as documents available for purchase, but customized to the needs of the patients at a particular facility—these are the very documents necessary to effectuate a change of control to avoid disrupting ongoing operations and the continuity of care for the facilities' resident patients. R33 at 267-270. To the extent the documents retained their base provisions, they are not proprietary; to the contrary, they are available for purchase at will. To the extent, if at all,[8] they had been customized to the Clute and Lake Jackson facilities, the Grethers had no interest in them once they released control of the facilities—in fact, they had contracted to leave them at the facility. (R69, R48a, R49a, Exhibits B and E at XXIX (A, C, and E)  Critically, the Grethers produced no *facts* to the trial court demonstrating a "particular, specific, and demonstrable injury" from their production; thus, they failed to meet their

---

[8] Spotlighting the challenges faced by Sunset on this point, it is not possible for Sunset to demonstrate to this Court the content of the policies and procedures (or refute the Grethers' assertion that they have been customized or are allegedly proprietary) because the documents remain under the trial court's control.

evidentiary burden. The trial court clearly abused its discretion in *sua sponte* refusing to make the policies and procedures documents generally available to Sunset.

Second, the substance of the documents bears directly on Sunset's claims. To establish its breach of contract claim, Sunset will have to prove the Grethers' *material* breach of the leases and that that breach caused injury. The substance of these documents demonstrate their materiality—they were essentially the "recipe" by which the facilities were operated; their denial precluded Sunset's ability to effect a smooth changeover. (R69, R48a, R49a, Exhibits B and E at XXIX (A, C, and E) In sum, removal of the policies and procedures documents denied Sunset the central benefit of the lease requirements—delivery of an ongoing business concern without disruption. (R69, R48a, R49a, Exhibits B and E at XXIX (A, C, and E) Likewise, Sunset will look to these documents to establish injury caused by their removal—the documents describe the benefit of the bargain against which damages will be measured.

The trial court's refusal to permit free use of these documents (1) vitiates or severely compromises Sunset's ability to present its breach of contract claim, *and* (2) renders it impossible for this Court to evaluate the effect of the trial court's error because the policies and procedures canot be made a part of the record. *See Euracat*, 425 S.W.3d at 582. Mandamus is appropriate.

**2.** **MDS documents.** The trial court's recent release of these documents changes Sunset's request for mandamus relief, but does not entirely moot it. Sunset explained its "fox guarding the henhouse" concerns, including the fact that the release documents were supposed to be sealed, but contain an affidavit dated ten days after the "sealed" documents were delivered to the Grethers' counsel, in its Supplemental Petition. Supp. Petition at 3-5. Significantly, the Grethers offered *no explanation* for this anomaly in their Response.

Likewise, Sunset explained in great detail the extent to which the trial court's refusal to enforce the subpoena as issued precludes its ability to present its claims and defenses to the trial court, and precludes meaningful review by this Court in its Petition. Petition at 65-70. Sunset stands on these arguments, and sees no need to repeat them here.

**3.** **"Discharge books."** Sunset contends the Grethers violated Section XXIX of the Lease Agreements in transferring resident patients out of the facilities in the days preceding the April 30, 2011 change over. (R69, R48a, R49a, Exhibits B and E at XXIX (B and E) It is not disputed the discharge books exist and contain information directly relevant to this claim. It is further undisputed that the Grethers are exclusively in control of this information. Thus, the substance of the documents bears directly on Sunset's claims.

To establish its breach of contract claim, Sunset will have to prove the Grethers' *material* breach of the leases and that that breach caused injury. The substance of these documents demonstrate their materiality—they are a succinct summary of the resident patients discharged in a relevant time period and by precluding Sunset's access to them, effectively, vitiates or severely compromises Sunset's ability to prove the Grethers' breach. (R69, R48a, R49a, Exhibits B and E at XXIX (B and E) Likewise, Sunset will look to these documents to establish injury caused by the patients' transfer.

The trial court's refusal to rule six weeks before trial (1) vitiates or severely compromises Sunset's ability to present its breach of contract claim, *and* (2) renders it impossible for this Court to evaluate the effect of the trial court's error because the discharge books cannot be made a part of the record. *See Euracat*, 425 S.W.3d at 582. Mandamus is appropriate. *See Able Supply Co. v. Moye*, 898 S.W.2d 766, 771-73 (Tex. 1995).

**4.    Employee communications.** Sunset contends the Grethers violated Section XXIX of the Lease Agreements in transferring key employees out of the facilities in the days preceding the April 30, 2011 change over. (R69, R48a, R49a, Exhibits B and E at XXIX (E and F) Ms. Stewart testified that responsive documents are within the Grethers' control. (R105 at Exhibit F). It is further

undisputed that the Grethers are exclusively in control of this information. Thus, the substance of the documents bears directly on Sunset's claims.

To establish its breach of contract claim, Sunset will have to prove the Grethers' *material* breach of the leases and that that breach caused injury. The substance of these documents demonstrate their materiality—they are evidence relevant to the Grethers' defense, and Sunset's contentions, concerning breach of Section XXIX(F) of the Lease Agreements. Without access to them, Sunset's ability to present its claim to the jury is, effectively, vitiated or severely compromised. Additionally, because Sunset will look to these documents to demonstrate injury caused by the transfer of key employees, and the disruption to operations that caused, the documents are material and central to the case.

The trial court's refusal to rule six weeks before trial (1) vitiates or severely compromises Sunset's ability to present its breach of contract claim, *and* (2) renders it impossible for this Court to evaluate the effect of the trial court's error because the employee communications cannot be made a part of the record. *See Euracat*, 425 S.W.3d at 582. Mandamus is appropriate. *See Able Supply*, 898 S.W.2d at 771-73.

### 5. Gayle Jacobs' knowledge of the interrelationship between the Grethers.

The Grethers only response on each of these issues is that the trial court has not yet—up to and including the June 23, 2015 hearing—issued an order on

16

Sunset's relevant motion to compel. Response at 35-36. But the trial court's refusal to rule on Sunset's motion a mere six weeks from trial is effectively, a denial of that motion. *See In re Colonial Pipeline Co.*, 968 S.W.2d 938, 942 (Tex. 1998) (holding that a trial court abuses its discretion when it fails to permit a reasonable and sufficient amount of time for review and utilization of the products of discovery, and explaining that the purpose of discovery is thwarted when parties are forced to do without the basic facts surrounding the operable claims or defenses). Because the Grethers offer no substantive response to Sunset's briefing on this point, Sunset stands on its Petition in reply as to each of these points. *See* Petition at 71-72, 74.

**6.      Appraisals.**  The trial court's release of the appraisal documents moots Sunset's request for relief as to these documents, *as the record currently stands*. The trial court has yet to render an order as to the use of these documents, and an order limiting the use of these documents may require Sunset to request additional relief.

A mere six weeks from trial, the trial court has refused to rule on many of Sunset's motions to compel, which is, effectively, denial of those motions. Sunset has demonstrated that as to each discovery request, (1) denial of discovery vitiates or severely compromises its ability to present its case, and (2) precludes this Court from meaningfully reviewing Sunset's complaints because the requested

17

information cannot be made part of the appellate record. Sunset has satisfied the requisites for mandamus relief, and respectfully asks this Court to grant its Petition for Writ of Mandamus.

## CONCLUSION AND PRAYER

The Grethers criticize Sunset's request for mandamus relief as "desperate." But a party should be in dire need of appellate interference before it seeks extraordinary relief. Here, without mandamus relief, despite its diligent effort to uncover key facts and the Grethers' unwavering attempts to hide the truth, Sunset is facing trial against a fraction of the responsible parties without information to which it is entitled. Such a proceeding is a complete waste of judicial resources; more importantly, it makes a mockery of a system devoted to fairness and justice.

Critically, while assailing the manner in which Sunset proved up the factual basis for its Petition, the Grethers do not deny a single factual allegation—it is undisputed on this record that the Grethers are interrelated parties, that they are represented by the same counsel,[9] have participated in these proceedings since their inception, and rely on the same witnesses and documents. The Grethers failed to show "surprise" under Rule 63; thus, the trial court clearly abused its discretion in striking Sunset's Amended Pleadings. To the extent the April pleading responded to Coleman's Rule 91a motion, Sunset's amendments were a

---

[9] *See infra.* (discussing the continued collaboration between the Grethers and Coleman and their respective counsel.

18

matter of right. There is simply no legal basis for the trial court's action. And because the benefits of mandamus relief—one trial against all parties—exceed its detriments—the risk of piecemeal litigation against related parties, with each proceeding implicating the same witnesses and evidence—Sunset has no adequate remedy by appeal. Sunset is entitled to mandamus relief.

Similarly, six weeks from trial, the trial court's repeated refusal to rule on Sunset's motions to compel is effectively a denial of those motions. The trial court clearly abused its discretion in denying discovery without holding the Grethers to the requisite evidentiary showing. Denial of the requested discovery both severely compromises Sunset's ability to present its claims and does so in a manner that precludes this Court's meaningful review. Sunset is entitled to mandamus relief.

For these reasons, Sunset respectfully asks this Court to grant its Petition for Writ of Mandamus and for such other and further relief to which it may be entitled.

Respectfully submitted,

**BURLESON LLP**

By:   /s/ Brandy R. Manning
     Brandy R. Manning
     Bar No.  24029703
     Midland Tower
     223 W. Wall Street, Suite 400
     Midland, Texas  79701
     432-253-8600 (office)
     432-253-8601 (Fax)
     brmanning@burlesonllp.com

By:   /s/ Felicia Harris
     Felicia Harris
     State Bar No. 24002438
     fharris@burlesonllp.com
     Demetri Economou
     State Bar No. 24078461
     deconomou@burlesonllp.com
     700 Milam, Suite 1100
     Houston, Texas 77002
     713.358.1700
     713.358.1717 fax

     **ATTORNEYS FOR
     SUNSET  NURSING  HOME,
     INC.**

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point font for text and 12-point for footnotes.  This document also complies with the word-count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 4,679 words, excluding any parts exempted by TEX. R. APP. P. 9.4(i)(1).

/s/ Brandy R. Manning
Counsel for Relator

## CERTIFICATE OF SERVICE

This will certify that on the 29th day of June, 2015, a true and correct copy of the foregoing document has been sent to the following via certified mail, return receipt requested, ESERVE, electronic mail and/or facsimile delivery in accordance with the Texas Rules of Civil Procedure.

Breck Harrison
JACKSON WALKER LLP
100 Congress, Suite 1100
Austin, Texas 78701
(512) 236-2000
(512) 236-2002 – Fax
bharrison@jw.com

**Counsel for Paul A. Heinig,**
**Plantation Health Care, Inc.,**
**Rebecca Ann, Inc., Donald Grether,**
**Grether Health Care Facilities, LLC,**
**Country Village Care, Inc,**
**Sara Grether Richards, Amy Grether Stewart**

Zandra Foley
Andrew Johnson
Thompson, Coe, Cousins & Irons, L.L.P.
One Riverway, Suite 1400
Houston, Texas 77056
zfoley@thompsoncoe.com
ajohnson@thompsoncoe.com

**Counsel for Stephen M. Coleman**

The Honorable Patrick Sebesta
239th Judicial District Court
Brazoria County, Texas
111 E. Locust, Room 310A
Angleton, Texas 77515

**RESPONDENT**

/s/ Brandy R. Manning
Brandy R. Manning

## CERTIFICATION

I certify that I have reviewed the reply and that concluded that every factual statement in the reply is supported by competent evidence included in the appendix or record.

/s/ Felicia Harris
Felicia Harris